CLARKSON, J., dissenting.
CONNOR and SCHENCK, JJ., concur in dissent.
This is an action instituted by the plaintiff to recover damages for personal injuries sustained by him in stepping from the curb of the sidewalk on the north side of East Davie Street, in the city of Raleigh, into the asphalt street in front of his place of business at night into a defective place in the street, which caused him to fall and suffer serious *Page 466 
injury. The city had permitted a ditch to be cut in the street five feet east of the entrance to plaintiff's storeroom for the purpose of installation of gas or other pipes. The ditch began at the curb and extended out toward the center of the street about five feet and was about eighteen inches wide. It had been filled in with the broken pieces of concrete and dirt which were removed at the time the ditch was dug. At the time of the accident the ditch was 4 1/2 to 5 inches deep at the curb, and its depth gradually lessened as it extended out towards the street.
The plaintiff was a salesman for the Toledo Scales Company and leased a building on the north side of East Davie Street for a storeroom for scales he kept on hand.
On the night of the injury plaintiff drove his automobile as near to the front of his building as he could get due to other parked automobiles, went into his storeroom, got a pair of scales weighing 160 pounds and came out to put the same on his automobile. He stepped off the curb into the depression caused by the ditch then existing, fell and received serious injuries. There was evidence that the parked automobiles cast a shadow across the ditch so that the plaintiff did not see it. The usual issues of negligence, contributory negligence, and damages were submitted to the jury and answered in favor of the plaintiff. From judgment thereon the defendant appealed.
Ordinarily sidewalks are constructed for the use of pedestrians and public streets for vehicular travel, except at street intersections. This does not necessarily mean that a pedestrian is prohibited from using any portion of a street except at an intersection, or that a city in no event would be liable for injuries sustained by a pedestrian while traversing or walking upon a public street at a place other than an intersection. Each case must be determined upon its merits.
All portions of a public street from side to side and end to end are for the public use in the appropriate and proper method, but no greater duty is cast upon the city than that it shall maintain the respective portions of its streets in a reasonably safe condition for the purposes for which such portions of the streets are respectively devoted. Kohlof v. Chicago,192 Ill. 249; 85 Am. S. R., 335. A municipality is only required to maintain the respective portions of the streets in reasonably safe condition for the purposes to which they are respectively devoted; thus, the driveway must be kept in such a state of repair as to be reasonably safe for horses and vehicles, but not necessarily for pedestrians. 43 C. J., 1006; 16 Ann. Cases, 424; L.R.A., 1917 F., 710; 19 L.R.A., 221. *Page 467 
In each case the way is to be pronounced sufficient or insufficient as it is, or is not, reasonably safe for the ordinary purposes of travel under the particular circumstances which exist in connection with that particular case. 43 C. J., 1011.
But we need not concern ourselves with the determination of the sufficiency of the evidence to establish negligence on the part of the defendant. If the plaintiff's evidence is such as to tend to show that he was guilty of contributory negligence as a matter of law, he cannot recover.
The plaintiff had been occupying the building near which this defect existed for ninety days. He testified: "I have been loading scales all the time since I have been selling them; I had been loading them there every day for ninety days, possibly. I had loaded them from the middle of the street even. I had loaded them from every part around there. I have stepped off of that sidewalk and that curb a number of times at different places, day and night. I never saw that hole before. I had been coming and going night and day for ninety days. I was within four or five feet of the place every time I went out, as a rule, depending on how I could get my car to the curb; if I went straight out I went four or five feet from this hold. I didn't have occasion to look right down in the gutter. I looked ahead of me where I was walking." He further testified: "I would not know how high the curb is there from the street up to the sidewalk level. I would not like to say it — I would not like to say because I would be guessing and I would not like to guess; it would be somewhere between two feet and six feet, but nothing near six feet, I am sure. I should think it would be anywhere between nothing and three feet; I think that that curb possibly would be a little more than one foot high."
If the period of time over which this plaintiff had been using this particular portion of the street and the conditions under which he used it are considered such as to put him on notice of the existence of the defect in the street, then it appears that in the nighttime, while carrying a weight of 160 pounds he walked out into the street without first ascertaining whether he was stepping from the curb at the place of the defect. If he had neither actual nor implied knowledge of the existence of the defect, then it appears from his testimony that while he was carrying a weight of 160 pounds in the nighttime and not knowing the depth of the curb, that is, the distance from the sidewalk line to the street line, he stepped off when he could not see and without first taking care to ascertain the extent of the drop from sidewalk to street. In either event, it would seem to us that this plaintiff has failed to exercise that degree of care for his own safety which the law imposed upon him and that his own negligence was at least a contributing cause of his injury. *Page 468 
He had a right to go into the street, but when he did so it was his duty to take notice of the fact that it was maintained primarily for vehicular traffic, and to exercise a higher degree of care for his own safety than was required of him while using the sidewalk. He had a right to presume that the sidewalk was maintained in a reasonably safe condition for pedestrians. No such presumption was available to him when he stepped off the sidewalk into the street in the middle of the block when he could not see where he was stepping. He was charged with the duty of exercising for his own safety the same degree of care which he demands of the city. Had he exercised such care it appears that this unfortunate accident would not have occurred.
There was error in the refusal of the court to grant the defendant's motion as of nonsuit.
Reversed.