MRS. LILLIAN M. WELLING v. CITY OF CHARLOTTE.

(Filed 14 January, 1955.)

1. **Trial §§ 22a, 22b—**

On motion to nonsuit, plaintiff's evidence, and so much of defendant's evidence as explains and makes clear that offered by plaintiff, will be considered in the light most favorable to plaintiff.

2. **Municipal Corporations § 14a—**

A city or town is not an insurer of the safety of its streets or sidewalks, but is required to exercise ordinary and reasonable care to maintain its streets and sidewalks in a reasonably safe condition, and is liable only for such injuries as are proximately caused by defects of such character that injury to travelers therefrom may be reasonably anticipated, and of which the city has actual or constructive notice.

3. **Same—**

A person traveling on a street or sidewalk is required to exercise due care to discover and avoid obstructions and defects, the care being commensurate with the danger or appearance thereof.

4. **Negligence § 17—**

In an action to recover damages for negligent injury, plaintiff must show failure of defendant to exercise due care in the performance of some legal duty which defendant owed plaintiff under the circumstances, and that such negligent breach of duty was the proximate cause of the injury.

5. **Negligence § 5—**

Proximate cause is that cause which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all of the facts as they existed.

6. **Negligence § 19a—**

Negligence and proximate cause are questions of law, and when the facts are admitted or established, the court must say whether they do or do not exist.

7. **Municipal Corporations § 14a—Nonsuit should have been entered on evidence in this action to recover for fall on sidewalk.**

The evidence tended to show that plaintiff was walking along a crowded sidewalk on a bright, sunshiny morning, that her heel caught in a hole in the sidewalk, and that she fell to her injury. There was no evidence as to how long the hole had existed except expert opinion testimony from appearances that the hole had been there a year or more. The evidence further tended to show that plaintiff had walked along the sidewalk in ques-

tion for a number of years, had not noticed any hole, and that at the time plaintiff fell she was not looking where she was going because the crowd blocked her view of the sidewalk. *Held:* Nonsuit should have been allowed upon defendant municipality's motions therefor aptly made.

APPEAL by defendant from *McKeithen, S. J.,* at 8 March, 1954, Special Civil Term, of MECKLENBURG.

Civil action to recover for personal injury allegedly sustained as proximate result of negligence of defendant.

The facts are admitted in the pleadings: Plaintiff is a resident of Mecklenburg County. Defendant is a municipal corporation created by the General Assembly of North Carolina, charged with certain administrative duties,—particularly the duties of maintenance, upkeep and supervision of sidewalks within said city for the use of the public. And the sidewalk on the easterly side of N. Tryon Street between Sixth and Seventh Streets in the city of Charlotte is under the maintenance, supervision and upkeep of the defendant.

And plaintiff alleges in her complaint in pertinent part: "4. That on Sunday, February 24, 1952, between 12 o'clock noon and 1:00 o'clock P. M., the plaintiff, on leaving services at the First Baptist Church located on N. Tryon Street, was in the process of walking in a southerly direction along the sidewalk located on the east side of said N. Tryon Street between Sixth and Seventh Streets; that the plaintiff was walking in company with many persons who had attended said church services; and while she was thus walking the heel of her shoe was caught in a hole which was in the surface of said sidewalk, causing her to fall with great force and violence to the hard surface of said sidewalk and injuring her as hereinafter alleged . . .

"6. That the injuries and damage sustained by the plaintiff were due to, caused and occasioned by, and followed as a direct and proximate result of the negligence of the defendant, in that the defendant carelessly and negligently allowed said sidewalk to become and remain in a dangerous and unsafe condition, so that it was unsafe for pedestrians such as the plaintiff to use, and the defendant knew that said condition of said sidewalk existed, or should have known of the existence of said unsafe condition in said sidewalk, for that said condition had existed for some time previous to February 24, 1952, and the defendant City negligently and in violation of its duties failed to repair said sidewalk and place same in a reasonably safe condition for persons to walk on and failed to post any notice or warning whatsoever of the dangerous and defective condition of said sidewalk . . .

"8. That by reason of the negligence of the defendant as herein set out the plaintiff has been injured and damaged in the sum of $40,000."

Defendant, answering, avers: That as to those matters and things set forth in paragraph 4 of plaintiff's complaint, it does not have sufficient knowledge or information upon which to form or base a belief as to the truth of same; and, that the allegations of paragraphs 6 and 8 of the complaint are untrue and are denied.

And by way of further answer and defense, defendant alleges "that if plaintiff was injured as alleged in the complaint and if such injury was caused by the negligence of defendant, which negligence is specifically denied, the plaintiff by her own negligence in not keeping a proper lookout as to where she was walking and observing and walking around or stepping over said hole contributed to her injury if such hole existed in said sidewalk as alleged in the complaint which is denied, the plaintiff by her action was contributorily negligent, which is specifically pleaded in bar of any recovery of plaintiff herein."

Upon trial in Superior Court, plaintiff, as witness for herself, testified on direct examination, in pertinent part, as follows: ". . . On Sunday, February 24, 1952, I went to Sunday School and Church at the First Baptist Church, located on N. Tryon Street next to the Library. The church is on the right-hand side of N. Tryon Street coming from the Square, and is located between 6th and 7th Sts., on the east side of N. Tryon Street. On that Sunday morning I rode up in an automobile of my next door neighbor . . . they let me off on 7th Street. After attending Sunday School and Church, I came out with the crowd and left the church by going out a little side door and started up the street to the Square to catch a bus. A very large crowd goes to the First Baptist Church and the sidewalk was crowded. The people on the sidewalk had been to church, and I would say about 2,050 or more . . . I started walking . . . and just as I got to the Baptist Book Store, I felt my heel go down in a hole and I started to fall. There were two ladies just a step ahead of me, and I made a grab at them, but they stepped away and I fell to the sidewalk . . . I broke my leg. There were so many people in front of me, I couldn't see what I had stepped into. There were so many people around me when I was lying on the sidewalk, I did not observe what I had stepped into . . . I was carried to the Presbyterian Hospital in an ambulance . . . At the time of the accident I was 64 years old . . . On Sunday, the day of the accident, I was just wearing low-heel oxfords, they were not very high . . . they were the same shoes that I customarily wore downtown shopping."

Then on cross-examination, plaintiff continued in pertinent part: "I have been a member of the First Baptist Church for something over ten years . . . Over the past ten years I have been walking from the Square to the church when I would go on the bus. I did not ride the bus too often, I just could not say how often. When I did go on the bus, I walked

from the Square on the east side of N. Tryon Street to the church. During that period of time I had not noticed the hole in which I got my heel next to the Book Store, I had not seen the hole."

And plaintiff continued: "As well as I can remember Sunday, February 24, 1952, after Church let out, it was a nice, bright, sunshiny day. I came out of the side door of the church with the crowd. The crowd could not scatter very well, there were so many people . . . All the people that came out of the church on this Sunday morning were not walking, some were standing on either side of me, and in the front and back, it was very crowded when I walked up the sidewalk, but I was not pushed around. I thought I had room to reasonably walk up the street. I was not walking with any special friend, I had just left from talking to them. I was not talking to anyone as I walked up the street . . . going to the Square, near the building. There were people on both sides, of course, walking, people in front and behind too. I was in the middle of the crowd . . . I could not watch the sidewalk, the people were very close together . . . If I had looked down, I could not have seen where my foot was going, the people were too close. I was not looking down, they were too close to one another. I had been in the habit occasionally of walking up that sidewalk and I thought the sidewalk was in good condition, I had never seen the hole. I had walked the sidewalk, but I just didn't look to see whether I was walking in the same spot or not. I was not crippled and never was one to feel along. I walked as I pleased, and I thought the sidewalk was reasonably fit for people to use for sidewalk purposes."

Then plaintiff was asked this question, to which she answered as indicated: "Q. And if on that Sunday morning you had been looking down, you possibly might have seen the hole mightn't you? A. I don't know whether I would or not, I guess I would."

Plaintiff also introduced Miss Brayboy as a witness. On direct examination she gave this narrative: ". . . I am a student nurse at Presbyterian Hospital and have been for two and a half years. On Sunday February 24, 1952, I attended services at the First Baptist Church of Charlotte. After church, I was walking down the street toward the Square . . . I did not see Mrs. Welling fall . . . I had an opportunity to observe the sidewalk at the point where Mrs. Welling was lying. There was a broken place in the cement and it was jagged around . . . I did notice that you could see the dirt under the cement . . . The hole went completely through the surface of the cement down in the dirt . . . Mrs. Welling said that she had fallen, got her foot hung in the cement. She did not say how . . ." The witness identifies photographs, plaintiff's Exhibits 7, 8 and 9, as depicting and representing the scene of the accident—showing two holes in the sidewalk at the corner of the Baptist Book Store. She identifies Exhibit 9 as picture of the hole on east side

of N. Tryon Street, between Sixth and Seventh Streets, at the corner of
the Baptist Book Store building on Sunday morning, February 24, 1952,
taken the day following the accident, and that the hand and feet shown
are hers. The index finger of the hand is resting on a stick of some kind
inserted in the hole nearer to the building.

Then under cross-examination, the witness continued: "I was a mem-
ber of the First Baptist Church and customarily went to church there.
I usually walked from the Square to the Church on the sidewalk on the
east side of the block between Sixth and Seventh Streets . . . I had
never noticed the hole I have talked about. I walked up the sidewalk
just like people do. I thought the sidewalk could have been better, but
it was all right . . ."

Plaintiff also offered as witness Curtis Halfhill, accepted by the court
as an expert engineer, who testified that on 27 February, 1952, he made
an examination, and made a drawing (sketch known as plaintiff's Exhibit
10) from measurements and on the spot photographs. (Exhibit 10 was
admitted in evidence for purpose of illustrating the testimony of the
witness and not as substantive evidence.) Then the witness stated that
this sketch is a graphic illustration of the condition of the sidewalk at
that time, and that these holes actually existed in the sidewalk just in
front of the pilaster at the northwest corner of the Baptist Book Store,
with about an inch or slightly more in depth going completely through
the concrete, the concrete slab being quite thick there, and showing down
into the dirt; that these two holes were "jagged in plan but in profile they
were rounded off"; that as you look upon them it would appear jagged,
but looking at the edges carefully, then the edges would be rounded off
as it gets when it's worn and aged, and that in his opinion "the holes had
been there perhaps two to three years"; that he roughly examined the
bottom of these holes and at the bottom were pieces of concrete that had
been pushed down into the soil below, and then water and moisture had
floated the soil back over them, so it appeared to be just complete dirt;
that actually there were particles and pieces of concrete below there;
that he observed stone and pulverized cement, and sand, and so on, asphalt
pieces; that the edges were rounded as the stone might be rounded, or
other concrete would be rounded from weathering; and that "it would
take probably more than a year considering normal foot traffic" for the
edges of the concrete to become weathered.

Then on cross-examination the witness Halfhill continued: "As I saw
the sidewalk up there on February 27, in front of the Baptist Book Store,
the center portions of the sidewalk as shown on plaintiff's Exhibit 7 were
reasonably fit to be used as a sidewalk, and if people would be walking
and kept in the direction they were going and would vary from one side
to the other they would be walking on sidewalk reasonably fit to be used

for sidewalk"; that "the hole immediately in front of the pilaster in front of the Baptist Book Store is over a drain pipe"; that "the drain pipe was far enough below the hole in the sidewalk that there was dirt over that"; that he, the witness, "did not see the drain pipe," but "could feel it by pushing through the dirt," "some inches below there . . . probably 3 or 4 inches"; that "the sidewalk slopes to the curb, and the drain line empties just below . . . the curb line"; that the hole as he has drawn it was as he saw it; and that on 27 February he could easily see the hole next to the Baptist Book Store. (Note in looking at Exhibit 10, drawn to scale, ¾ inch to equal one foot, the sidewalk in front of the book store is 12 feet wide from building line to curb. And the two holes are represented: "Hole in asphalt" nearer to, and within 1' 4" of the building line; and the other "hole in concrete" is 1' 4" away from the building line; dimensions over-all 4½" by 4½", though not square.)

At the close of plaintiff's evidence, motion of defendant for judgment as of nonsuit was overruled, and defendant excepted. Exception 1.

Defendant then offered witnesses: Lloyd G. Richey, one of them, testified in pertinent part: ". . . I . . . am the City Engineer of the city of Charlotte. The maintenance of sidewalks and streets comes under the jurisdiction of the City Engineer. Prior to February 24, 1952, I had never received notice of any holes in the sidewalk in front of the Baptist Book Store on N. Tryon Street. The sidewalks in the city . . . are inspected by my department approximately once a year. We have periodic inspections, but no set specified time in between. There are approximately 300 miles of sidewalk in the city . . ."

Then on cross-examination, the witness continued in part: ". . . One city block would be two blocks of sidewalk total length . . . It is my estimate that we get around to making an inspection about once a year of particular sidewalks. It is possible that a hole could exist in a sidewalk for a year before it would be discovered. I did not personally examine the hole in the sidewalk on the east side of N. Tryon Street near the northwest corner of the Baptist Book Store building; I had someone else examine it. The existence of the hole was reported to me. My employees were not at all sure that that was where the accident happened, the general location was all we had. As a result of the report made by these employees shortly thereafter, we patched the hole."

And Ernest G. Davis, another witness for defendant, testified in pertinent part: "I am maintenance engineer of the city of Charlotte. Shortly after February 24, 1952, upon instructions from Mr. Richey, I inspected the sidewalk in front of the Baptist Book Store . . . I found close to the building two small holes, the hole closest to the building was a hole best described as about square, about 4 inches across each way, that is, from side to side, it would be about 4 inches . . . When I saw the hole, it was

filled practically flush with the level of the sidewalk with silt and dirt. I took a screwdriver and raked the dirt out of the hole and made my measurements. The hole was about one inch deep. After I scratched the dirt out concrete was at the bottom of the hole. The hole did not extend through the sidewalk to the ground underneath. The hole as shown on Mr. Halfhill's map, plaintiff's Exhibit 10, does not reflect the condition of the sidewalk as I found it when I inspected it . . . on February 28, 1952. My inspection showed the hole to be . . . 4 inches square. Mr. Halfhill's map shows the hole not that size at all, but larger on one side here, greater than 4 inches square . . . I was directed to go there, and went there on February 28, 1952. The photograph, plaintiff's Exhibit 8, fairly depicts and represents the location of the holes in front of the store . . . The two holes were very close together . . . approximately the same size. The hole nearest the building was more square in size than the other hole . . . looked to me as if a 4 by 4 piece of wood might have been placed in the walk while the cement was wet and set up around it. I had that impression on my first look . . . one side of it was of a broken nature, the north side . . . the hole furtherest from the building was fairly close to an old asphalt patch . . . I assume that the sidewalk on N. Tryon Street between Sixth and Seventh is used by a great many people. Such sidewalks are not as busy as some others. There are other blocks on this same N. Tryon Street that have more pedestrian traffic than in this particular block. I would say that within a block of the particular location you would find the busiest sidewalk from the point of view of pedestrian traffic . . . the location in front of the Baptist Book Store is a little more than a block from the Square . . . and the Square is commonly referred to and known as the center of the city and its shopping area. I would say that the heaviest pedestrian traffic is within one block of the Square in all directions."

Defendant renewed its motion for nonsuit. Motion overruled. Exception 2.

The case was submitted to the jury, and upon verdict favorable to plaintiff, the court entered judgment in accordance therewith.

Defendant excepts thereto, Exception 3, and appeals therefrom to Supreme Court, and assigns error.

*Tillett, Campbell, Craighill & Rendleman for plaintiff, appellee.*
*John D. Shaw for defendant, appellant.*

WINBORNE, J. Did the trial court err in overruling defendant's motions for judgment as of nonsuit aptly made? After careful review, and consideration of the evidence offered by plaintiff and so much of defendant's evidence as is favorable to plaintiff, or tends to explain and make

clear that which was offered by the plaintiff, all as shown in the case on appeal, and in the light most favorable to plaintiff, *Rice v. Lumberton*, 235 N.C. 227, 69 S.E. 2d 543, this Court is constrained to hold that demurrer to the evidence, or motion for judgment as of nonsuit, renewed at the close of all the evidence, G.S. 1-183, should have been sustained "if not upon the principal question of liability . . . then upon the ground of contributory negligence." See *Burns v. Charlotte*, 210 N.C. 48, 185 S.E. 443; *Houston v. Monroe*, 213 N.C. 788, 197 S.E. 571; *Watkins v. Raleigh*, 214 N.C. 644, 200 S.E. 424; *Gettys v. Marion*, 218 N.C. 266, 10 S.E. 2d 799; and *Walker v. Wilson*, 222 N.C. 66, 21 S.E. 2d 817.

A city or town is not an insurer of the safety of its streets. *Fitzgerald v. Concord*, 140 N.C. 110, 52 S.E. 309; *Oliver v. Raleigh*, 212 N.C. 465, 193 S.E. 853; *Ferguson v. Asheville*, 213 N.C. 569, 197 S.E. 146; *Houston v. Monroe, supra; Watkins v. Raleigh, supra; Gettys v. Marion, supra; Walker v. Wilson, supra,* and numerous other cases.

The liability of a city or town for injuries from defects or obstructions in its streets is for negligence which is the proximate cause of the injury. As stated in *Walker v. Wilson, supra,* opinion by *Denny, J.,* "The liability of a municipal corporation for injuries from defects or obstructions in its streets is for negligence and for negligence only; it is not an insurer of the safety of travelers, and is not liable for consequences arising from unusual or extraordinary circumstances which could not have been foreseen, but is required to exercise ordinary or reasonable care to maintain its streets and sidewalks in a reasonably safe condition for travel by those using them in a proper manner." 43 C.J., Municipal Corporations, Sec. 1785, p. 998.

Indeed, as stated by this Court, opinion by *Hoke, J.,* in *Fitzgerald v. Concord, supra:* "The town, however, is not held to warrant that the condition of its streets . . . shall be at all times absolutely safe. It is only responsible for negligent breach of duty, and, to establish such responsibility, it is not sufficient to show that the defect existed and an injury has been caused thereby. It must be further shown that the officers of the town might have discovered the defect, and the character of the defect was such that injuries to travelers therefrom might reasonably be anticipated." This principle is applied in *Gettys v. Marion, supra,* in opinion by *Barnhill, J.,* now *C. J.,* in this manner: "The happening of an injury does not raise the presumption of negligence. There must be evidence of notice either actual or constructive . . . The existence of a condition which causes injury is not negligence *per se* . . ."

On the other hand, a person traveling on a street is required in the exercise of due care to use his faculties to discover and avoid defects and obstructions, the care being commensurate with the danger or appearance thereof. *Russell v. Monroe*, 116 N.C. 720, 21 S.E. 550; *Rollins v. Win-*

*ston-Salem,* 176 N.C. 411, 97 S.E. 211; *Ferguson v. Asheville, supra; Watkins v. Raleigh, supra.* He is guilty of contributory negligence if by reason of his failure to exercise such care he fails to discover and avoid a defect which is visible and obvious. *Pinnix v. Durham,* 130 N.C. 360, 41 S.E. 932; *Watkins v. Raleigh, supra.*

Moreover, in this action, as in all civil actions for the recovery of damages for injuries allegedly resulting from actionable negligence, "The plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owes the plaintiff, under the circumstances in which they are placed; and, second, that such negligent breach of duty was the proximate cause of the injury,—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84. See also *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326, and cases cited.

And the principle prevails in this State that what is negligence is a question of law, and, when the facts are admitted or established, the Court must say whether it does or does not exist. "This rule extends and applies not only to the question of the negligent breach of duty, but also to the feature of proximate cause." *Hicks v. Mfg. Co.,* 138 N.C. 319, 50 S.E. 703; *Lineberry v. R. R.,* 187 N.C. 786, 123 S.E. 1; *Murray v. R. R., supra.*

In *Lineberry v. R. R., supra,* this Court in opinion by *Clarkson, J.,* said: "It is well settled that where the facts are admitted, and only one inference may be drawn from them, the Court will declare whether an act was the proximate cause of the injury."

In the light of these principles, the following is an outline of the evidence offered on the trial of this case. On Sunday, 24 February, 1952, plaintiff, in going from First Baptist Church to the Square, stepped into a hole located in the sidewalk on east side of North Tryon Street between Sixth and Seventh Streets in close proximity to the corner of a building. But there is no direct evidence as to how long this hole had been there. For ten years, plaintiff, in attending the First Baptist Church, had walked from the Square on the sidewalk in question, and had not noticed the hole. For two and a half years, plaintiff's witness, the student nurse, who came to assistance of plaintiff at time she fell, had customarily attended services at the First Baptist Church and usually walked from the Square to the Church on the sidewalk in question, and had never noticed the hole she talked about seeing there on Sunday, 24 February, 1952, after plaintiff fell. She had "walked up the sidewalk just like people do," and she "thought the sidewalk could have been better, but it was all

right." When, then, was the hole made? The only evidence as to this came from the expert engineer, Mr. Halfhill, who gave it as his opinion, from appearances, "the hole had been there perhaps two or three years," and that "it would take probably more than a year, considering normal foot traffic, for the edges of the concrete to become weathered." He testified that he examined the place on 27 February, 1952, and "he could easily see the hole."

"Sunday, February 24, 1952, after church let out, it was a nice, bright, sunshiny day."

Thus it was the duty of plaintiff, in the exercise of due care, to use her faculties to discover and avoid defects and obstructions, the care being commensurate with the danger or appearance thereof. But the sidewalk was crowded with people, who had just come out of the church. Some were standing on either side of her, and in front and back, when she walked up the sidewalk toward the Square. She testified: "I could not watch the sidewalk, the people were very close together . . . If I had looked down, I could not have seen where my foot was going, the people were too close. I was not looking down, they were too close up to one another . . . I was not crippled and never was one to feel along. I walked as I pleased, and I thought the sidewalk was reasonably fit for people to use for sidewalk purposes."

Thus it appears that plaintiff had put herself in a position in which she could not, and did not attempt to use her faculties to discover and avoid defects and obstructions, as it was her duty to do in the exercise of due care.

Under all the circumstances, however unfortunate and regrettable the occurrence may be, the city is not liable therefor.

Hence the judgment below is

Reversed.