JOHN TEEMAN DENNIS v. THE CITY OF ALBEMARLE, RAY SNUGGS, AND D. A. HOLBROOK, CONTRACTOR.

(Filed 25 May, 1955.)

**1. Electricity §§ 6, 7—**

A person maintaining an overhead wire across a public road at a height that will not clear vehicles which do not exceed the maximum legal height of 12 feet, 6 inches (G.S. 20-116 (c)), is liable under the general law of negligence for injury to a motor vehicle or its occupants resulting from the maintenance of such wire.

**2. Same: Municipal Corporations § 14h—**

Evidence that defendant municipality maintained a wire of its electric power system over a highway at a height less than 12 feet, 6 inches, and that plaintiff, standing at the rear of a truck loaded with hay with his head above the main load, was struck in the mouth by the wire as the truck passed under the wire, and was thereby thrown from the truck to his injury, *is held* sufficient to be submitted to the jury on the issue of the negligence of the municipality in the maintenance of the wire.

**3. Negligence § 19c—**

Judgment of nonsuit on the ground of contributory negligence should not be entered unless the evidence, taken in the light most favorable to plaintiff, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom.

**4. Negligence § 11—**

A person will not be held contributorily negligent as a matter of law for forgetfulness or inattention to a known danger when under the exigencies and circumstances of the particular situation a person of ordinary prudence would have forgotten or would have been inattentive to the danger because of the diversion of his attention by conditions suddenly arising, or when the situation is such as to require him to give undivided attention to other matters.

**5. Electricity § 10—Evidence held not to show contributory negligence as matter of law on part of plaintiff in failing to see overhead wire.**

The evidence tended to show that plaintiff was aware of the maintenance by defendant of a low wire across a highway near his home, that plaintiff, standing at the rear of a truck loaded with hay with his head above the main load, was on the lookout for the wire, but that he did not know the exact height of the wire, that the wire was difficult to see because of trees along the side of the highway, and that as the truck was driven under the wire, plaintiff's attention was diverted by a workman calling to him from a steeple of a church along the highway. *Held:* Plaintiff was not guilty of contributory negligence as a matter of law in failing to see the wire under the existing conditions, since diverse inferences may be drawn from the evidence as to whether a person of ordinary prudence would have seen the wire under the exigencies of the situation.

**6. Trial § 31c—Instruction in this case held sufficient to conform to pleadings and evidence.**

The basis of this action was the maintenance by defendant of a wire across a highway at a negligently low height. Plaintiff alleged that the defendant was negligent in the construction of the wire and that the wire had been torn down when struck by a truck on a previous occasion and thereafter repaired and replaced in the same position, that defendant had knowledge of the location and condition of the wire, and, by implication, that defendant had at all times maintained the line. *Held:* The failure of plaintiff to allege specifically that appealing defendant replaced the wire does not preclude an instruction supported by the evidence that defendant would be liable if the wire had remained as originally constructed or, if not, that defendant had knowledge and notice that it had been restored in the same location, there being no contention by defendant that injury was caused by the intervening act of a third party.

**7. Pleadings § 24—**

In determining the question of variance, a pleading will be liberally construed with a view to substantial justice, and a party may not complain of an immaterial variance which does not take him by surprise and which in no way prejudices him. G.S. 1-168.

**8. Municipal Corporations § 46—**

G.S. 1-53 does not apply to actions against a municipality based on tort.

**9. Same—**

Evidence tending to show that claimant delivered to the city clerk his claim for damages against the municipality, that the claim was addressed to the mayor and board of commissioners, and that the original notice was in the municipality's custody and voluntarily produced by it in open court at the trial, discloses a substantial compliance with the charter provisions of the city requiring that such claim should be presented to the board of commissioners.

APPEAL by defendant City of Albemarle from *Gwyn, J.,* February Term, 1955, of STANLY.

Action commenced 8 April, 1953, to recover damages for personal injuries.

Plaintiff, John Teeman Dennis, sued the City of Albemarle, a municipal corporation, and Ray Snuggs, its employee, and D. A. Holbrook, a general contractor. Judgment of nonsuit was entered as to defendant Holbrook. The record does not show a judgment of nonsuit as to defendant Snuggs. However, the case was submitted to the jury only as between plaintiff and defendant City of Albemarle, hereafter called defendant.

Plaintiff based his action on defendant's negligence. Defendant denied that it was negligent; and pleaded, as further defenses, (1) contributory negligence, (2) the 2-year and 3-year statutes of limitations,

and (3) its special charter provision relating to the presentation of claim prior to suit.

The evidence tends to show that plaintiff was injured on 21 September, 1950, about 3 p.m., under the circumstances set out below.

The Anderson Grove Church road, hereafter called church road, located about three miles east of the City of Albemarle, extended north from Highway 27 to the Albemarle-Badin highway. It was some twenty feet wide, unpaved. There were eight houses along this road, including that of plaintiff. The road derived its name from the fact that the Anderson Grove Baptist Church was located thereon, some two hundred yards north of Highway 27.

In the Spring of 1950, Holbrook, as general contractor, began construction of a new church building on the original site. The old building was moved from the west to the east side of the church road. Holbrook placed a tool house on the west side of the church road, for use at the site of the new building. In his work, he needed power to operate saws and other electrical equipment.

In May, 1950, defendant, in the operation of its electric power system, constructed "a secondary line" from the old church building across the road to Holbrook's tool house. Copper wire, 8-gauge, was used. It was covered by black, waterproof insulation. The diameter of wire and insulation was from ¼ inch to ⅜ inch.

Plaintiff had known of this power line for at least two and a half months. He had passed under it some fifty times, about twenty when in an automobile or truck and the rest when in a 2-horse wagon. While he had observed it, he had not measured its height above the road.

On 21 September, 1950, plaintiff, by means of a borrowed truck, provided and operated by neighbors, was hauling hay from his farm on Highway 27 to his home on the church road. He had passed along the church road on the day he was injured, at least twice, and had seen the power line. In loading the truck, shortly before plaintiff's injury, some 65-70 bales of hay were placed thereon. The driver and another got in the cab. The tailgate was out of the truck. Bales were placed along the back of the truck. These bales were fourteen inches higher than the bed of the truck. Plaintiff and Greene stood thereon, the main load being between them and the cab. The main load was higher than the top of the cab and was "neck-high" to plaintiff and Greene. They rode in this position so they could watch and steady the main load.

In making this trip, the truck turned from Highway 27 into the church road. In approaching the overhead power line, the road curved slightly to the left. The road passed through a grove of oak trees, in full leaf, in the vicinity of the church. Some trees and limbs had been cut at the location where the old church building had been moved across the road.

A witness (Morton) was seated on a school bus, traveling approximately fifty yards behind the truck. He saw the power line when he was about thirty feet from it. He testified: "You could see the wire both to the right and left of the road for a distance of about thirty feet at that time of day. I could not see it straight ahead very well. I saw it when it came from the old Church building and I saw it where it was attached to the tool house."

Plaintiff was watching for the wire but did not see it. He knew the wire was there but did not know its height. He attributed his inability to see it, in part, to the presence of the trees, some fifty to seventy-five feet high.

When he was within ten feet of the power line, a workman called to him from the church steeple: "Hello, Old Man Teeman." (Plaintiff was then fifty-seven years old.) Instinctively, he looked in that direction and answered: "Good morning, son." When he turned back, he looked for the wire but didn't see it. The wire came "sliding right over the top" of the main load of hay. Neither the cab nor the hay was struck. Greene saw the wire coming near the top of the hay. He called, "Duck," and laid his head on the hay. Just then, the wire struck plaintiff in the mouth, threw him from the truck and caused him to suffer injuries.·

A witness (Shaver) offered by plaintiff testified that on 11 September, 1950, when driving his transfer truck along the church road at night, he had knocked down the wire; and that the same thing occurred about four days later. The height of his truck was eleven feet, three inches.

Plaintiff's evidence tended to show that on 21 September, 1950, the wire was located, as to height and all other respects, as when originally constructed.

Defendant's evidence tended to show that it had constructed the power line; that it had furnished power to Holbrook from the time it was constructed until plaintiff was injured; and that since its construction the power line had been under its inspection and supervision.

Plaintiff's injury was caused by contact with the wire itself, not by electric current.

Evidence of plaintiff and of defendant as to the height of the power line, crossing the church road, was sharply in conflict.

Issues arising on the pleadings were answered by the jury as follows:

"1. Was the plaintiff's claim duly presented to the City Council of the City of Albemarle? Answer: Yes.

"2. Is the plaintiff barred by the statutes of limitations? Answer: No.

"3. Was the plaintiff injured by the negligence of the defendant City of Albemarle, as alleged in the Complaint? Answer: Yes.

"4. Did the plaintiff by his own negligence contribute to his injury, as alleged in the Answer? Answer: No.

"5. What amount, if anything, is the plaintiff entitled to recover? Answer: $4,400.00."

Plaintiff was awarded judgment against defendant, in accordance with the verdict. Defendant appealed, assigning errors.

*C. M. Llewellyn and M. B. Sherrin for plaintiff, appellee.*

*R. L. Smith & Son and Henry C. Doby, Jr., for defendant City of Albemarle, appellant.*

BOBBITT, J. When the evidence is considered in the light most favorable to plaintiff, the case presented was one for submission to the jury. Hence, defendant's assignments of error, based on the denial of its motions for judgment of nonsuit, are overruled.

The facts as to the purpose and location of the power line are stated above. Plaintiff's evidence tends to show that the height of the wires, over the church road, was nine feet, nine inches.

In some states, the minimum height at which wires may be placed, or permitted to remain, above any traveled portion of a highway, is fixed by statute. *Eaton v. Consumers' Power Co.,* 256 Mich. 549, 240 N.W. 24. In the absence of such statute, it has been held that a person maintaining an overhead wire across a public road has no legal duty to maintain it at height greater than that necessary to clear vehicles within the maximum legal height. *Osborne v. Chesapeake & Potomac Telephone Co.,* 121 W. Va. 357, 3 S.E. 2d 527. Our statute, G.S. 20-116 (c), in pertinent part, provides that "no vehicle, unladen or with load, shall exceed a height of twelve feet, six inches, . . ." When the height of the vehicle, unladen or with load, does not exceed twelve feet, six inches, it may be lawfully operated upon any public road. The liability of one responsible for a wire stretched across a road at a height less than twelve feet, six inches, which causes injury to a motor vehicle or its occupants, rests on the general law of negligence. 60 C.J.S. 550, Motor Vehicles sec. 205. The court properly submitted the issue of negligence under appropriate instructions of law as related to evidence.

Even so, defendant insists that the evidence discloses that plaintiff was contributorily negligent, as a matter of law. In this connection, the applicable rule, as stated often in our decisions, is that judgment of nonsuit will not be entered unless the evidence, taken in the light most favorable to plaintiff, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom. *Horton v. Peterson,* 238 N.C. 446, 78 S.E. 2d 181. "The court is not at liberty to withhold the question from the jury, simply because it is

fully convinced that a certain inference should be drawn, so long as persons of fair and sound minds might possibly come to a different conclusion." Negligence, Shearman and Redfield, Revised Edition, sec. 129.

The general rule, applicable here, is well stated in 65 C.J.S. 726, Negligence sec. 120, as follows: "When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. To forget or to be inattentive is not negligence unless it amounts to a failure to exercise ordinary care for one's safety. Regard must be had to the exigencies of the situation, and the circumstances of the particular occasion. Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and, if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence." See also: 25 Am. Jur. 760, Highways sec. 468; 40 C.J.S. 319, Highways sec. 270.

The issue of contributory negligence was held for the jury, when plaintiff's attention was momentarily and involuntarily diverted when accosted by another person, in the following cases: *City of Valparaiso v. Schwerdt*, 40 Ind. App. 608, 82 N.E. 923; *Gigoux v. Yamhill County*, 73 Ore. 212, 144 Pac. 437; *Kenyon v. City of Mondovi*, 98 Wis. 40, 73 N.W. 314; *Lyon v. City of Grand Rapids*, 121 Wis. 609, 99 N.W. 311.

Upon the evidence here presented, the inference is permissible that plaintiff responded involuntarily when accosted by one calling from the steeple of the church. It can hardly be said that, when plaintiff's attention was momentarily diverted by this rather unusual greeting, the only permissible inference is that he failed to act as an ordinarily prudent person would have acted under the circumstances then existing.

Difficulty in observing the wire, on account of its size, color and location; inability to gauge the height of the wire on this and prior occasions and lack of knowledge of its height; and the momentary and involuntary diversion of attention when accosted from the church steeple; these circumstances, when considered together, are such that more than

one reasonable inference may be drawn therefrom. Hence, the court properly submitted the issue of contributory negligence under appropriate instructions of law as related to the evidence.

Defendant further contends that the court, in its charge, erroneously submitted the negligence issue on a theory of liability unsupported by appropriate allegation.

Plaintiff alleged that "the City of Albemarle and Ray Snuggs" were negligent in their construction and location of the power line. He alleged further that the wires had been torn down when struck by a truck and thereafter repaired and replaced by "the defendants," in the same position.

There was ample evidence to support the first of these allegations and to support the proposition that the wires remained as originally located until plaintiff's injury. The testimony of Shaver stands alone. His is the only evidence tending to show the wires were knocked down by a truck. Defendant's evidence tends to show no such incident occurred. If the wires were knocked down and replaced, there is no evidence as to who replaced the wires between 11 September, 1950, and 21 September, 1950. Yet there is ample evidence that the wires on 21 September, 1950, were in their original location.

In this situation, the court submitted plaintiff's case on two theories of liability: (1) that the power line had remained as originally constructed; and, if not, (2) that defendant had knowledge or notice that it had been restored and was in use at the same location. Under principles of law underlying the decision in *Kiser v. Power Company*, 216 N.C. 698, 6 S.E. 2d 713, the second theory of liability was a possibility arising upon the evidence then before the court and jury. The crucial issue in controversy was whether the wires on 21 September, 1950, were located and maintained at such height over the church road as to constitute negligence.

Was plaintiff precluded from having his case properly submitted to the jury by variance between his pleading and the evidence? It is noted that plaintiff did not specifically allege that the City of Albemarle, one of three original defendants, replaced the wires. Plaintiff did allege generally that the defendants had knowledge of the location and condition of the wires. Plaintiff did not allege specifically that defendant at all times "maintained" the power line. Yet this may be implied from other allegations and is clearly shown by defendant's evidence. "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties." G.S. 1-151.

Conceding that the complaint should have been amended to conform more closely to the alternative theories of liability, dependent upon the

jury's findings of fact, we cannot see that the defendant, who neither alleged nor offered evidence that plaintiff's injury was caused by the intervening negligent act of a third party, has been taken by surprise or is in any way prejudiced. Hence, such variance as may exist is deemed immaterial. G.S. 1-168. The case is readily distinguishable from *Harton v. Telephone Co.*, 146 N.C. 430, 59 S.E. 1022, upon which defendant relies.

Defendant assigns as error the peremptory instructions given in plaintiff's favor on the first and second issues.

At the trial, plaintiff was permitted to amend his complaint so as to allege that he presented to the Mayor and governing body of the City of Albemarle within two years from its occurrence his claim for injuries sustained by him on 21 September, 1950; and defendant was permitted to amend its answer so as to plead the special charter provision set out below, and plaintiff's failure to present claim as required thereby, as a further defense to plaintiff's action.

The charter provision, offered by defendant, provides: "That all persons having claims against the town of Albemarle of whatever nature or kind, shall first present the same to the board of commissioners . . . for payment at least sixty days before any suit shall be entered or maintained upon said claim."

Defendant's contention is that the evidence is insufficient to show that plaintiff presented his claim to the Board of Commissioners as required by this charter provision and also by G.S. 1-53.

G.S. 1-53, presently codified as a statute of limitation, provides, in part, as follows: "All *claims* against counties, cities and towns of this State shall be presented to the chairman of the board of county commissioners, or to the chief officers of the cities and towns, within two years after the *maturity* of such claims, or the *holders* shall be forever barred from a recovery thereon, . . ." (Emphasis added.) An interesting discussion of the history of G.S. 1-53 appears in 27 N.C.L.R. 145 *et seq.* The words emphasized in the portion quoted, as well as the further provisions thereof, and the history of said statute, impel the conclusion that G.S. 1-53 does not apply to actions for damages based on torts. This answers the query posed in *Rivers v. Wilson*, 233 N.C. 272, 63 S.E. 2d 544. It is noted that a like construction has been placed upon G.S. 153-64. *Nevins v. Lexington*, 212 N.C. 616, 194 S.E. 293; *Sugg v. Greenville*, 169 N.C. 606, 86 S.E. 695.

The facts relating to the presentation of plaintiff's claim are as follows: Formal notice of plaintiff's claim was prepared by attorneys acting for plaintiff, in which full particulars of plaintiff's injury on 21 September, 1950, were set out, and demand was made for damages in the amount of $10,000.00. This was addressed to the Mayor and Board

of Commissioners of Albemarle and delivered by plaintiff's counsel to the City Clerk. The attorney then acting for plaintiff testified to these facts. He was shown a carbon copy of such formal notice and asked to identify it. Thereupon, as shown by the record: "Defendant's counsel supplied plaintiff's counsel with original instrument." The original, so produced by defendant, was then identified and offered in evidence.

Defendant contends that delivery to the City Clerk was not presentation to the Board of Commissioners, citing *Nevins v. Lexington, supra.* We need not consider whether this, standing alone, would be sufficient. Substantial compliance with the charter provision was required. *Ivester v. Winston-Salem,* 215 N.C. 1, 1 S.E. 2d 88; *Perry v. High Point,* 218 N.C. 714, 12 S.E. 2d 275. Here the original notice, more than three years after it had been delivered to the City Clerk, was produced by defendant voluntarily in open court for use as an exhibit in lieu of plaintiff's carbon copy thereof. The original notice had been and was in defendant's custody. Under these circumstances, nothing else appearing, it must be held that plaintiff's demand was presented to the Board of Commissioners in substantial compliance with the charter requirements.

Other assignments of error do not require analysis or discussion. The case was well tried and in it we find no prejudicial error.

No error.