MARY HARDESTY WALLSEE v. CAROLINA WATER COMPANY AND TOWN OF MOREHEAD CITY.

(Filed 22 September, 1965.)

**1. Municipal Corporations § 12—**

Evidence that the holder of a municipal water franchise maintained a water meter box which had been sunk in the ground some seven or eight inches below the level of the adjacent unpaved street, leaving an open hole above, that such condition had existed for six or seven months, and that both the municipality and the water company had been warned of this condition as constituting a danger to pedestrians, and that plaintiff was injured when she stepped into the hole and fell, *held* sufficient to be submitted to the jury on the issue of actionable negligence of the municipality and water company.

**2. Negligence § 11—**

The law imposes upon a person *sui juris* the duty to exercise the care of a reasonably prudent person to protect himself from injury, the standard of care being constant while the degree of care varies with the exigencies of the situation and the danger to be avoided.

**3. Same—**

Mere forgetfulness or inattention to a known danger will not constitute contributory negligence when it is due to conditions which would divert the attention of a reasonably prudent person, but if under the circumstances an ordinarily prudent person would not have forgotten or been inattentive to the danger, such forgetfulness or inattention constitutes negligence.

**4. Municipal Corporations § 12— Evidence held to show inattention to known danger, constituting contributory negligence as matter of law.**

Plaintiff's evidence, considered in the light most favorable to her, tended to show that she was cognizant of the danger to pedestrians from a water meter box which had sunk some seven or eight inches below the level of the street, that she had reported this condition both to the municipality and the water company, that as she left her home and turned to walk parallel to the street her attention was diverted by the barking of her dog, that she turned to admonish the dog to keep it from following her, and that when she turned back she stepped into the hole of the water meter box and fell to her injury. *Held:* Plaintiff's own evidence discloses contributory negligence barring recovery as a matter of law.

**5. Negligence § 11—**

Contributory negligence need not be the sole proximate cause of an injury to bar recovery, but it is sufficient for this purpose if it contributes to the injury as a proximate cause or one of them.

**6. Negligence § 26—**

When plaintiff's own evidence, considered in the light most favorable to him, affirmatively shows contributory negligence so clearly that no other conclusion can be reasonably drawn from the evidence, defendant's motion to nonsuit should be allowed.

**7. Negligence § 11—**

What constitutes contributory negligence as a matter of law cannot be determined by inflexible rule but must be decided in accordance with the facts in each particular case.

APPEAL by plaintiff from *Cowper, J.*, June 1965 Session of CARTERET.

Civil action to recover damages jointly and severally from both defendants for personal injuries sustained by plaintiff when she fell on Fisher Street in the town of Morehead City due to a hole in the street where Carolina Water Company had placed a water meter box.

Carolina Water Company filed a separate answer denying any negligence on its part, and alleging as a further defense that if it should be established that it was negligent, then plaintiff was guilty of contributory negligence.

The town of Morehead City filed a separate answer denying any negligence on its part, and alleging conditionally as a further defense that plaintiff was guilty of contributory negligence, and further alleging that if it should be established that it was negligent and the Water Company was negligent, which it denies, and that plaintiff was free from contributory negligence, then its negligence was secondary and the Water Company's negligence was primary, and it would be entitled to indemnification from the Water Company.

Plaintiff alleged the following facts in her complaint, which each defendant in its answer admitted to be true:

> "On or about the 3rd day of May, 1963, the defendant Water Company, duly licensed for the purpose, was engaged in the business of supplying, for profit, the Town of Morehead City and its other patrons with water, for both commercial and domestic purpose, and was operating as owner a system of aqueducts and pipes for water delivery, and in connection with its operation the said Water Company also used meters, placed in meter boxes, for measuring the quantity of water supplied its different customers, and all of which was done through franchise arrangement with the defendant Town of Morehead City."

Carolina Water Company admitted in its answer "that on or about the 3rd day of May, 1963, this defendant was using a water meter on the north side of Fisher Street near its intersection with 22nd Street in the Town of Morehead City, North Carolina, and that the meter was encased in a box with top dimensions of about 10 x 20 inches."

The parties stipulated as follows:

> "Fisher Street (the one concerned with in this case) in Morehead City was and is sixty (60) feet wide, unpaved, and that all

of the sidewalks of the Town that are paved are five (5) feet wide and two (2) feet from the property line."

This is a summary of plaintiff's evidence, except when quoted: On 3 May 1963 plaintiff, a woman 63 years old, lived in a house at 2112 Fisher Street, which is on the north side of the street, with her daughter and son-in-law. She had been living there seven or eight years. During this period she walked along Fisher Street many, many times, and other pedestrians used this street. There was always grass along Fisher Street: at some seasons more than others. In Fisher Street in front of the house in which plaintiff lived, Carolina Water Company had placed a water meter box with top dimensions of about 10 x 20 inches about seven feet from the property line of plaintiff's home. For six or seven months prior to May 1963 this water meter box had been in a hole about six inches below the level of Fisher Street according to an allegation in the complaint, and about seven or eight inches, or about 12 or 14 inches, below the level of Fisher Street according to the evidence. There was grass around this hole, but the lid of the meter box could be seen. Plaintiff in using Fisher Street many, many times passed by this hole where the water meter box was and knew the hole was there. Plaintiff testified:

"The meter box was there near my place. It was sunk down in the ground at least 7 or 8 inches if not further. It has been in that condition for 6 or 7 months. I had made complaint about it to Mr. Gillikin, the one who reads the meters and told him someone was going to get hurt in that meter box; that some of the children were playing ball in the street and maybe some grown person was going to fall in it and get hurt. I told him about it several times. . . . I called the City, the place where the truck was that has charge of the street. They call it the Street Department, and told the one that answered the telephone and he said he would tell Mr. Waters, head of the Street Department."

On the afternoon of 3 May 1963, she was keeping house for her daughter, looking after the children. They had come home from school and wanted her to go to a grocery store about a block and a half away to get them some "hot dogs." She testified as follows:

"I came out of the house and down the step and turned on what would be a sidewalk if it was paved, and when I started around like I was going out towards the street my little dog started barking, and not thinking I turned around to tell her to go back, that I'd be back in a few minutes — I didn't want her following me because I was afraid she'd get hit, and when I turned back around

both feet went in this water meter hole and I fell over on the ground."

She testified as to the occurrence on cross-examination as follows:

"My dog come barking, as I said, and I turned around for to tell her to go back. When I turned around she was sitting on the porch and I said, 'You stay there until I come back.' I was looking at her then. It was a little rat terrier and fice, mixed. I was not stepping backwards. When I turned around I was standing still. I turned around and I looked toward the porch and she was sitting right in front of the doorsteps on the porch and I said, 'You lay down, I'll be back in a few minutes.' When I turned back around both feet went in the hole."

V. C. Simmons, a witness for plaintiff, and another person were riding in an automobile in the vicinity of 22nd and Fisher Streets passing by plaintiff's house. He heard plaintiff holler, stopped the car, jumped out and ran over to her. He testified:

"She was sitting on the ground with one foot in the hole. We picked her up and carried her into the house. The hole was about 12 or 14 inches deep. It looked like a hill built up around the hole. There was some amount of grass and the main water thing was sitting down approximately six inches under it where the grass was. * * * She was sitting down and hollering, 'Oh, my Lord, my leg, my leg!' "

In the fall she sustained a fracture of the external malleolus of the fibula in the left leg and a fracture of the fifth metatarsal in her right foot.

From a judgment of compulsory nonsuit as to both defendants entered at the close of plaintiff's evidence, she appeals.

*Harvey Hamilton, Jr., and Luther Hamilton, Sr., for plaintiff appellant.*

*George H. McNeill for the Town of Morehead City defendant appellee.*

*Barden, Stith, McCotter & Sugg by L. A. Stith for Carolina Water Company defendant appellee.*

PARKER, J. Plaintiff's evidence considered in the light most favorable to her would permit a jury to find the following facts and to draw the following legitimate inferences therefrom, *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492:

Carolina Water Company, through franchise arrangement with the town of Morehead City, placed on Fisher Street in the town of Morehead City a water meter box, with top dimensions of about 10 x 20 inches, in front of plaintiff's home. For six or seven months prior to 3 May 1963 this water meter box had been sunk down in the ground at least seven or eight inches below the level of Fisher Street leaving an open hole above. This open hole above the meter box created a dangerous condition in Fisher Street to pedestrians using the street. Plaintiff knew this dangerous condition was in the street and reported it several times to Carolina Water Company, and also reported it to the town of Morehead City. Neither defendant did anything to remedy this dangerous condition in Fisher Street, to prevent injury to pedestrians using the street, although each had actual knowledge of it, and the character of the hole in Fisher Street was such that injury to pedestrians using this street might reasonably be anticipated by defendants. On 3 May 1963 plaintiff stepped in this hole, fell, and was seriously injured. Plaintiff's evidence would permit a jury to find that each defendant was negligent, and that the negligence of each proximately caused her injuries. *Washington Gaslight Co. v. District of Columbia,* 161 U.S. 316, 40 L. Ed. 712; *Gregg v. Wilmington,* 155 N.C. 18, 70 S.E. 1070; *Oklahoma Natural Gas Co. v. Hancock, Okla.,* 272 P. 2d 450; 63 C.J.S., Municipal Corporations, §§ 863(a) and 867; 19 McQuillin, Municipal Corporations, 3d Ed., § 54.91; *Fitzgerald v. Concord,* 140 N.C. 110, 52 S.E. 309; *Faw v. North Wilkesboro,* 253 N.C. 406, 117 S.E. 2d 14; *Bailey v. Asheville,* 180 N.C. 645, 105 S.E. 326; *Gasque v. Asheville,* 207 N.C. 821, 178 S.E. 848; *Ferguson v. Asheville,* 213 N.C. 569, 197 S.E. 146. *Gettys v. Marion,* 218 N.C. 266, 10 S.E. 2d 799, and *Rivers v. Wilson,* 233 N.C. 272, 63 S.E. 2d 544, are factually distinguishable.

The Honorable Luther Hamilton, Sr., a former distinguished jurist and a learned and scholarly lawyer, with his customary frankness and fairness to the Court, states in his brief for plaintiff:

"As to Contributory Negligence on the Part of the Plaintiff: We concede that, except for the attention of the plaintiff being diverted momentarily by the barking of her little dog, there would have been no excuse for her stepping into the meter box hole. She knew of its existence, had passed it many times, and was afraid that she herself or somebody else might fall in, and, knowing of its presence, always before had evaded or avoided it, while passing that way 'many, many times.' The barking of her little dog reminded her, or at least suggested the probability, that she was about to be followed by it and that she was unwilling to have it 'follow her down the street' for fear it might get run over

or hurt. * * * Plaintiff turned around to admonish the dog, and as she stepped forward in turning back, without having had time to redirect her attention to where she was going, the next step, made as she turned, put her right into the hole of the water meter box."

Plaintiff contends that the barking of her little dog diverted her attention or mind from her known danger of the open hole above the water meter box, and that the question of whether or not she was guilty of negligence proximately contributing to her injuries should be submitted to a jury under the law as stated in 65 C.J.S., Negligence, § 120, p. 726, which is quoted with approval in *Dennis v. Albemarle*, 242 N.C. 263, 87 S.E. 2d 561, and also in *Walker v. Randolph County*, 251 N.C. 805, 112 S.E. 2d 551, from the *Dennis* case. This statement of law is as follows:

"When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. To forget or to be inattentive is not negligence unless it amounts to a failure to exercise ordinary care for one's safety. Regard must be had to the exigencies of the situation, and the circumstances of the particular occasion. Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and, if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence."

The law imposes upon a person *sui juris* the duty to exercise ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided. *Rosser v. Smith*, 260 N.C. 647, 133 S.E. 2d 499; *Alford v. Washington*, 244 N.C. 132, 92 S.E. 2d 788. The standard of care is always the conduct of the reasonably prudent man. The rule is constant while the degree of care which a reasonably prudent man exercises or should exercise varies with the exigencies of the occasion. *Greene v. Meredith*, 264 N.C. 178, 141 S.E. 2d 287.

Plaintiff, according to her own testimony, knew that the water meter box "was sunk down in the ground at least 7 or 8 inches if not further," below the level of Fisher Street, and had been for 6 or 7 months. During this time she passed it many, many times. She knew the hole had created a dangerous condition in the street for pedestrians using the street. She testified: "I had made complaint about it to Mr. Gillikin, the one who reads the meters and told him someone was going to get hurt in that meter box; that some of the children were playing ball in the street and maybe some grown person was going to fall in it and get hurt. I told him about it several times. * * * I called the City, the place where the truck was that has charge of the street. They call it the Street Department, and told the one that answered the telephone and he said he would tell Mr. Waters, head of the Street Department."

Considering plaintiff's evidence in the light most favorable to her, it compels the inescapable conclusion — no other conclusion can be reasonably drawn therefrom — by any person of fair and sound judgment that under the same or similar circumstances the barking of a little pet dog on the porch, which apparently desired to follow its owner to a nearby grocery store, would not have diverted the mind or attention of an ordinarily prudent person and caused him to forget or to be inattentive to the known danger of a dangerous hole in the sidewalk he was using, the perilous character of which he had reported with the statement "someone is going to get hurt in that meter box," and that under all the circumstances as shown by plaintiff's own evidence, her stepping into this hole and falling, a hole she knew was in the sidewalk and had reported to defendants with the statement "someone is going to get hurt in that meter box," constituted a failure to exercise that degree of care and caution to protect herself from injury that an ordinarily prudent person under like conditions of known danger and foreseeability of injury would exercise, and was negligence, and that such negligence on her part was one of the proximate causes contributing to her injuries.

"Plaintiff's negligence need not be the sole proximate cause of the injury to bar recovery. It is enough if it contribute to the injury as a proximate cause, or one of them." *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357.

It is firmly established in the adjective law of this State that when the defendant pleads contributory negligence, and plaintiff's own evidence, considered in the light most favorable to him, affirmatively shows such contributory negligence on his part so clearly that no other conclusion can be reasonably drawn therefrom, defendant is entitled to have his motion for judgment of compulsory nonsuit sustained. *Ramey*

v. R. R., 262 N.C. 230, 136 S.E. 2d 638; *Edwards v. Vaughn*, 238 N.C. 89, 76 S.E. 2d 359; *Bundy v. Powell*, 229 N.C. 707, 51 S.E. 2d 307.

*Walker v. Randolph County, supra,* is factually distinguishable, in that, *inter alia,* plaintiff was in the courthouse "intent on finding a notice of sale at the time she fell down the stairway," she had never been in that part of the courthouse before, and never realized the stairway was there until she fell down it. *Dennis v. Albemarle, supra,* is also factually distinguishable, in that, *inter alia:* "Plaintiff was watching for the wire but did not see it. He knew the wire was there, but did not know its height. He attributed his inability to see it, in part, to the presence of the trees, some fifty to seventy-five feet high." See also the opinion on rehearing of the *Dennis* case, 243 N.C. 221, 90 S.E. 2d 532.

No inflexible rule can be laid down as to what constitutes contributory negligence as a matter of law, as each case must be decided on its merits. Plaintiff by her own evidence has proven herself out of court on the ground of contributory negligence. *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601. The conclusion we have reached finds support in our following decisions: *Burns v. Charlotte,* 210 N.C. 48, 185 S.E. 443; *Oliver v. Raleigh,* 212 N.C. 465, 193 S.E. 853; *Houston v. Monroe,* 213 N.C. 788, 197 S.E. 571; *Watkins v. Raleigh,* 214 N.C. 644, 200 S.E. 424; *Finch v. Spring Hope,* 215 N.C. 246, 1 S.E. 2d 634; *Welling v. Charlotte,* 241 N.C. 312, 85 S.E. 2d 379. See also *O'Neill v. City of St. Louis,* Supreme Court of Missouri, Division No. 1, 239 S.W. 94. The judgment of compulsory nonsuit below is

Affirmed.