JAMES A. HILL, JR. v. DENNIS E. SHANKS
No. 6912SC259

(Filed 22 October 1969)

**1. Trial § 21— motion to nonsuit — consideration of evidence**

On motion to nonsuit, the evidence and stipulations must be considered in the light most favorable to plaintiff, giving him the benefit of all reasonable inferences therefrom, resolving all conflicts in his favor, and disregarding defendant's evidence tending to show a different state of facts.

**2. Automobiles § 62— striking soldier in drill formation — failure to keep proper lookout — sufficiency of evidence**

In this action for personal injuries received when plaintiff was struck during darkness by defendant's automobile at an intersection on a military reservation while double-timing in formation with his platoon, plaintiff's evidence and stipulations by the parties *are held* sufficient to be submitted to the jury on the issue of defendant's negligence in failing to maintain a proper lookout, where they tend to show that defendant was driving at a time when and in an area where he knew troop movements in formation were to be expected, that he knew such troops would have the right-of-way over his vehicle, that he was approaching an intersection lighted by a street light, that a road guard was in the center of the intersection in front of him, that the guard raised his hand and yelled "Stop," and that defendant failed to see the guard and failed to see a platoon of 45 or 50 men moving in formation into the intersection in front of him until after his car had struck plaintiff.

**3. Automobiles § 8— duty to maintain proper lookout**

The driver of a motor vehicle has the duty to keep an outlook in the direction in which he is traveling and is held to the duty of seeing that which he ought to have seen.

**4. Negligence § 35— nonsuit for contributory negligence**

Judgment of nonsuit on the ground of contributory negligence should not be entered unless the evidence, taken in the light most favorable to plaintiff, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom.

**5. Automobiles § 83— crossing intersection — soldier in drill formation — contributory negligence**

In this action for personal injuries received when plaintiff was struck during darkness by defendant's automobile while double-timing in platoon formation across an intersection on a military reservation, the evidence *is held* not to disclose contributory negligence on the part of defendant as a matter of law in failing to observe the headlights of defendant's automobile approaching the intersection, where it would permit the inference that plaintiff's attention was directed to performing his duties as squad leader, and that he relied upon the customary practice of the road guard to stop all oncoming traffic.

**6. Damages § 12; Pleadings §§ 32, 36— evidence of loss of sense of taste — failure to allege — denial of amendment to pleadings**

In this action for personal injuries received when plaintiff was struck by defendant's automobile, the trial court did not err in refusing to allow plaintiff to testify with respect to his loss of the sense of taste, where there was no allegation in the complaint concerning plaintiff's loss of the sense of taste, and no abuse of discretion has been shown in the disallowance of plaintiff's motion made during trial for leave to amend his complaint to allege the loss of sense of taste as an element of damages.

**7. Pleadings § 32— amendment during trial**

A ruling upon a motion to amend pleadings made during the course of the trial is addressed to the trial court's discretion, G.S. 1-163, and the

exercise of this discretion is not reviewable on appeal in the absence of palpable abuse.

**8. Appeal and Error § 50;    Damages § 16—    evidence of loss of sense of smell — stipulation — instructions — harmless error**

In this action for personal injuries in which it was stipulated during trial that plaintiff lost his sense of smell as a result of the accident complained of, plaintiff was not prejudiced by trial court's instruction that there was evidence in the case tending to show that plaintiff received an injury to his head which resulted in the loss of his sense of smell, where the court instructed the jury when the stipulation was entered that it had been conceded that plaintiff had lost his sense of smell as a result of the accident, following the stipulation plaintiff and his expert medical witness both testified at length concerning plaintiff's loss of the sense of smell, and no conflicting evidence on the matter was introduced by defendant.

**9. Appeal and Error § 46—    burden of showing prejudicial error**

The burden is on an appellant not only to show error, but to show that the alleged error was prejudicial and amounted to the denial of some substantial right.

APPEALS by defendant and by plaintiff from *Braswell, J.,* 2 December 1968 Civil Session of CUMBERLAND Superior Court.

Plaintiff received personal injuries when struck by a car driven by defendant on 6 July 1967 at approximately 5:30 a.m. at the intersection of K Street with Fifth Street on the military reservation at Fort Bragg, North Carolina. K Street runs generally east and west and dead ends into Fifth Street which runs north and south, forming a "T" intersection. Plaintiff, a ROTC cadet, was double-timing in formation with his platoon in a westerly direction along the right-hand side of K Street. Defendant was driving in a northerly direction along Fifth Street.

The pleadings raised issues of negligence, contributory negligence, and damages. Defendant, at the close of plaintiff's evidence and again at the close of all the evidence, moved for judgment as of involuntary nonsuit. To the overruling of his motions defendant excepted and appealed. The jury answered the issues in favor of plaintiff and awarded him $4,949.00. In apt time plaintiff moved that the verdict be set aside, the judgment vacated, and a new trial granted on the issue of damages. The court denied plaintiff's motion and plaintiff excepted and appealed.

Facts necessary for determination of both appeals are set out in the opinion.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by L. Stacy Weaver, Jr., for plaintiff appellant-appellee.*

*Anderson, Nimocks & Broadfoot, by Henry L. Anderson, for defendant appellant-appellee.*

PARKER, J.

## DEFENDANT'S APPEAL:

Defendant contends his motions for nonsuit should have been granted on the grounds that, first, no actionable negligence on the part of defendant has been shown by the evidence, and second, even if the evidence should be deemed sufficient for submission to the jury on the question of defendant's negligence, plaintiff's contributory negligence is apparent as a matter of law.

[1] It is elementary that on motion to nonsuit all the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom. *Clarke v. Holman*, 274 N.C. 425, 163 S.E. 2d 783. Stipulations favorable to plaintiff must also be considered. *Lienthall v. Glass*, 2 N.C. App. 65, 162 S.E. 2d 596 (certiorari denied 274 N.C. 378). All conflicts in the evidence are to be resolved in plaintiff's favor, and all evidence by defendant tending to show a situation or a course of events contrary to that shown by the plaintiff's evidence is to be disregarded. *Bennett v. Young*, 266 N.C. 164, 145 S.E. 2d 853. It is our duty, as it was the trial tribunal's, to consider the evidence in the light of these principles. If, when so considered, it is sufficient to support a finding by the jury that defendant was negligent and that his negligence was a proximate cause of plaintiff's injury, defendant's motions were properly denied, unless the evidence, so considered, so clearly reveals contributory negligence on the part of plaintiff that no other inference may be reasonably drawn therefrom. *Bennett v. Young, supra.*

At the trial the parties stipulated that the following portions of the Post Motor Vehicle and Traffic Regulations at Fort Bragg, N. C., were in force and effect at the time of the injuries to plaintiff:

" '5-3.   Established speed limits are as follows:

5-3.1.   Housing and troop areas — 20 miles per hour.'

5-3.2.   Service drives in housing areas — 10 miles per hour.

5-3.3.   When approaching or passing troops in formation — 10 miles per hour.

Section 8-3 which relates as follows:

'8-3.   Pedestrians' right-of-way at crosswalks. Within any
        marked or unmarked crosswalks at an intersection, not
        protected by a traffic signal or Military Policeman, any
        pedestrian having entered same has the right-of-way over
        all approaching vehicles.'

Section 12-1. through 12-5.4 which relates as follows:

'12.   Pedestrians' Rights and Duties.

   12-1.   Pedestrians will obey all traffic control signs and sig-
           nals.

   12-2.   Crossing at Other than Crosswalks.— Any pedestrian
           crossing a roadway other than at an intersection or
           marked crosswalk, will yield the right-of-way to all
           approaching vehicles.

   12-3.   Pedestrians to Use Sidewalks and Left Side of Road.
           Pedestrians, including small troop details, will use
           sidewalks, and where not available, will walk on the
           left side of road facing traffic.

   12-4.   Foot Columns Have Right-of-Way. Foot troops in
           column have the right-of-way over all traffic except
           emergency vehicles and will march on the right side of
           road as near the curb or shoulder as possible.

   12-5.   Unit Commanders are responsible for the safe move-
           ment of foot troops and will:

      12-5.1   Have flank guards halt traffic from all directions
               when crossing roadways or intersections.

      12-5.2   Use flank movements to cross roadways.

      12-5.3   Avoid heavily traveled roadways whenever possible.

      12-5.4   If roadways must be used for movements of troops
               during the hours of darkness, adequately positioned
               and well lighted advance, flank and rear guards
               will be provided to warn approaching vehicular
               traffic. Lighting used will be of a type of intensity
               that does not blind oncoming motorists.' "

   It was also stipulated that defendant was the owner and op-
erator of the automobile which struck plaintiff at or near the inter-
section of Fifth and K Streets on 6 July 1967, and that 20 m.p.h.
was the posted speed limit for Fifth Street at the time of the acci-
dent.

Plaintiff offered evidence which tended to show: Plaintiff was at Fort Bragg, N. C., attending summer camp as a College ROTC cadet. On the morning of 6 July 1967, he and the other members of his platoon were awakened around 4:30 or 5:00 o'clock. They dressed in white T shirts, fatigue pants, and combat boots and went out for the customary morning run. Plaintiff was first squad leader, which put him in the left front position of his platoon. The platoon consisted of between 45 to 50 men and there were four squad leaders and a platoon sergeant. Under the system used, as the platoon approached an intersection the first man behind the squad leader of the first squad and the first man behind the squad leader of the fourth squad, upon the command of the Platoon Leader, "Road Guards Post," were to break ranks, run ahead of the rest of the platoon out into the intersection, and there stop any oncoming traffic. The platoon was moving at double-time (170 36-inch steps per minute) along K Street toward Fifth Street. Cadet Erb, who was the first man immediately behind plaintiff, had the duty of acting as one of the road guards. Approximately 20 yards before the platoon reached the intersection, the platoon leader gave the command "Road Guards Post" and the road guards immediately broke ranks. Plaintiff's duty was to stay in front of the squad in line with the other squad leaders and lead the men around the block. As Cadet Erb left the platoon formation, a Volkswagen turned the corner from his right, coming close to hitting him, but Erb got out of the way and proceeded to his post in the center of the lane of the intersection. Defendant's car was approaching at the time. It was dark and all Cadet Erb could see were headlights. He raised his hand and yelled "Stop," but defendant evidently did not see him, so Erb again yelled "Stop." When it became obvious that defendant did not see him, Erb moved to the left to keep from being hit and yelled "Watch out" several times. The platoon and the car were both then entering the intersection. Cadet Erb heard the car thud against the platoon. Erb first saw defendant's car when he was approaching the intersection, at which time the car was about 75 yards away. When he assumed his road guard position in the center of the lane, the car was 40 to 50 yards away. Erb estimated the speed of the car to be 20 miles per hour or more. The road guards wore nothing distinctive to distinguish them from any other men in the outfit. Erb had no flashlight and was dressed in fatigue pants, combat boots and white T shirt. The platoon was moving straight when he first called "Watch out." By the time he called a second time, the platoon had begun the turn and plaintiff was moving away from the oncoming vehicle. Erb observed

no marked change in the position of the platoon in response to his call.

Defendant's evidence tended to show: Defendant had been stationed at Fort Bragg about a year and one-half and was living in barracks on post. For approximately two months he had been temporarily assigned to a truck company to drive trucks for the ROTC cadets while they were at Fort Bragg for summer training. At the time of the accident he was driving his personal car north on Fifth Street, accompanied by one passenger, and was on his way to the motor pool to pick up his truck to go to work. He was familiar with the area and had been on this special duty assignment to the ROTC units since about the first of June. There was a stop sign on K Street. The weather was clear and it was dark. Defendant entered Fifth Street about four blocks from K Street. He had stopped for a stop sign at I Street. Fifth Street passes over a small hill between I and J Streets, the crest of the hill being approximately 40 to 50 yards from K Street. K Street is the first street north of J Street and as one approaches K Street from J Street, the roadway is running downhill. As defendant came over the hill, he saw the Volkswagen, which turned in front of him. Defendant dimmed his lights and went on. He was driving about 15 miles per hour. There was a thud and defendant swerved and stopped. The right front fender of defendant's car struck plaintiff. Defendant saw plaintiff on the hood of the car. Defendant hit the brakes and plaintiff slid off the front fender. Defendant had gotten three-fourths of the way through the intersection when his car struck plaintiff. Defendant heard nothing as he approached the intersection. He was familiar with the intersection. He had taken special examinations and tests to drive military vehicles and knew the rules and regulations with respect to motor vehicles, pedestrian and troop traffic on the Fort Bragg military reservation. He knew that a platoon of men had the right-of-way over motor vehicles, with the exception of emergency vehicles. He knew that ROTC cadets were barracked in the vinicity of K Street and knew they engaged in close-order drills and double-time drills upon the streets of their barracks area. Defendant did not see the platoon nor did he see Cadet Erb in the road immediately ahead of him. He did not hear anyone yell "Stop." Until the point of impact he had not slowed his vehicle nor swerved either right or left. There was no obstruction in the road to prevent his turning to the left. After his car struck plaintiff, defendant had no trouble seeing plaintiff lying on the pavement and no trouble seeing the other members of the platoon. There was a street light at the intersection and there was nothing to prevent the light from shining down K Street.

Defendant could not say whether the light was shining at the time of the accident.

There was also evidence tending to show that the defendant's car had been left out all night in a parking lot; that when defendant and his passenger first got into the car in the parking lot, there was a considerable accumulation of moisture on the windshield; and that defendant had operated the defroster for a short period prior to driving his car from the parking lot. The passenger testified that the windshield was clear at the time of the accident.

**[2, 3]** In our opinion the evidence and the stipulations, when considered in the light most favorable to the plaintiff, were sufficient to support a jury finding of actionable negligence on the part of the defendant. So considered, the evidence would permit but not compel the jury to find that defendant was driving before, daylight at a time when and in an area where he knew troop movements in formation were to be expected; that he knew that troops moving in formation would have the right-of-way over his vehicle; that he was approaching an intersection lighted by a street light; that a road guard was in the center lane of the intersection in front of him; that the guard raised his hand and yelled "Stop"; that the defendant failed to see or hear the guard, and failed to see a platoon of 45 or 50 men moving double-time in formation into the intersection in front of him; that plaintiff, moving as a part of this platoon and as the front man in the left-hand squad, moved into the intersection; and that defendant failed to see the plaintiff or any other member of the platoon until after defendant's car had struck the plaintiff. While there is no evidence that the defendant actually saw plaintiff prior to the instant of impact, the driver of a motor vehicle has the duty to keep an outlook in the direction in which he is traveling and is held to the duty of seeing that which he ought to have seen. *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330. The evidence in this case raised an issue for the jury as to whether the outlook being maintained by defendant was the exercise of that degree of care which a reasonably prudent man would have exercised under like circumstances.

Defendant contends, however, that the evidence discloses contributory negligence on the part of plaintiff as a matter of law in that plaintiff ran, in the darkness, toward and into an intersection where he saw or should have seen automobile headlights approaching and that plaintiff thereby failed to exercise due care for his own safety. We do not agree.

**[4]** Judgment of nonsuit on the ground of contributory negligence

should not be entered unless the evidence, taken in the light most favorable to the plaintiff, so clearly establishes contributory negligence that no other reasonable inference or conclusion can be drawn therefrom. *Black v. Wilkinson,* 269 N.C. 689, 153 S.E. 2d 333; *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360.

In *Dennis v. Albemarle,* 242 N.C. 263, 87 S.E. 2d 561, the Court speaking through Bobbitt, J., said at page 268:

> "The general rule, applicable here, is well stated in 65 C.J.S. 726, Negligence sec. 120, as follows: 'When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. To forget or to be inattentive is not negligence unless it amounts to a failure to exercise ordinary care for one's safety. *Regard must be had to the exigencies of the situation, and the circumstances of the particular occasion.* Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and, if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence.'" (Emphasis added.)

See also *Walker v. Randolph County,* 251 N.C. 805, 112 S.E. 2d 551, wherein the same principle was applied.

[5] Upon the evidence presented in the present case, the inference is permissible that plaintiff's attention was directed to performing his duties as squad leader, relying upon the customary practice of the road guard to perform the duty assigned to him. It was for the jury to determine whether plaintiff's failure to observe the oncoming vehicle was a failure to exercise the degree of care which an ordinarily prudent person would have exercised under the circumstances.

### PLAINTIFF'S APPEAL:

Plaintiff assigns as error the court's refusal to set aside the verdict, vacate the judgment, and grant a new trial on the issue of damages.

[6, 7]    Within the framework of this assignment, plaintiff contends that the court erred in not allowing plaintiff to testify with respect to his loss of the sense of taste (as distinguished from loss of the sense of smell, which was stipulated). While the excluded testimony would have been relevant on the issue of damages and would have been admissible if there had been an appropriate allegation in the complaint, in the present case there was no allegation in the complaint concerning plaintiff's loss of the sense of taste. During the course of the trial and after this testimony had been excluded, the plaintiff did move the court for leave to amend his complaint to allege the loss of the sense of taste as an element of damages. This motion was overruled. A ruling upon a motion to amend pleadings made during the course of the trial is addressed to the trial court's discretion, G.S. 1-163, and the exercise of this discretion is not reviewable on appeal in the absence of palpable abuse. *Crump v. Eckerd's, Inc.*, 241 N.C. 489, 85 S.E. 2d 607. No manifest abuse of discretion has been made to appear in this case.

[8, 9]    Finally, plaintiff assigns as error that portion of the judge's charge to the jury in which the court, in referring to the evidence as to the plaintiff's injuries, stated: "There is evidence in this case which tends to show . . . that he (the plaintiff) received an injury to his head which resulted in the loss of his sense of smell." Plaintiff contends that this was error in view of the fact that during the course of the trial and while plaintiff was testifying as to the nature of his injuries, the parties had stipulated that "the plaintiff, James A. Hill, Jr., had a sense of smell prior to the accident and as a result of the accident he has lost his sense of smell." However, even if it be conceded that the court by inadvertence appeared to be leaving to the jury the discretion to determine a fact which had already been established by stipulation, in our opinion plaintiff has not been in any way prejudiced by such inadvertence. At the time the parties entered into their stipulation, the court clearly instructed the jury that it had been conceded that plaintiff had lost his sense of smell as a result of the accident. Furthermore, following the making of this stipulation, plaintiff and an examining physician, who was called as an expert witness by the plaintiff, both testified at considerable length concerning the plaintiff's loss of the sense of smell. No conflicting evidence on this matter was introduced by the defendant. We do not see how the court's reference to the plaintiff's evidence or its inadvertent failure to make a further reference to the stipulation in its charge could have in any way misled the jury to the prejudice of the plaintiff. The burden is on an appellant not only to show error, but to show that the alleged error

was prejudicial and amounted to the denial of some substantial right. 1 Strong, N.C. Index 2d, Appeal and Error, § 46, p. 190. No such denial of any substantial right has been demonstrated in this case.

On defendant's appeal we find

No error.

On plaintiff's appeal we find

No error.

MALLARD, C.J., and BRITT, J., concur.