J. ALAN BARRINGER AND WIFE, JENNIE S. BARRINGER, PLAINTIFFS v. MID PINES
DEVELOPMENT GROUP, L.L.C., DEFENDANT

No. COA01-960

(Filed 3 September 2002)

## 1. Negligence— jury instructions—diversion

The trial court erred in a negligence case, where plaintiff husband was injured after tripping on an electrical cord at a buffet table, by refusing to give plaintiffs' requested jury instructions on diverted attention because: (1) plaintiffs showed their requested instruction was a correct statement of the law since the defense of contributory negligence cannot be asserted where defendant diverted plaintiff's attention preventing the visitor from discovering the obvious hazard; (2) plaintiff's requested instruction was supported by the evidence since defendant's manager even admitted that an attractive display of food attracts someone's attention; (3) the instruction given failed to encompass the substance of the law requested; and (4) the trial court's instruction did not provide the jury with a complete instruction on the law as it pertained to the facts of this case.

## 2. Evidence— hearsay—psychological test—unexplained conclusions

The trial court erred in a negligence case by admitting the unexplained conclusions of a psychological test, because: (1) the psychologist who administered the test was not present at trial; (2) there was no testimony at trial to establish that the test was properly administered; (3) there was no testimony whether results of the analysis were temporary or permanent; (4) the results were admitted for the truth of the matter asserted; and (5) the trial court provided no limiting instruction with respect to the testimony regarding the personality test.

Judge TYSON dissenting.

Appeal by plaintiffs from judgment entered 31 July 2000 by Judge Ronald L. Stephens in Wake County Superior Court and order entered 27 October 2000 by Judge Ronald L. Stephens denying plaintiffs' motion for new trial. Heard in the Court of Appeals 13 May 2002.

*The Jernigan Law Firm, by Leonard T. Jernigan, Jr. and N. Victor Farah, for plaintiff-appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patrick H. Flanagan and Jaye E. Bingham, for defendant-appellee.*

EAGLES, Chief Judge.

J. Alan Barringer and Jennie S. Barringer ("plaintiffs") appeal from judgment entered on a jury verdict finding Mid Pines Development Group, L.L.C. ("defendant") negligent and J. Alan Barringer ("Mr. Barringer") contributorily negligent.

On 16 November 1995, Mr. Barringer attended a workshop for the North Carolina Board of Examiners for Electrical Contractors at the Mid Pines Inn and Golf Club in Southern Pines. Defendant owns and manages Mid Pines Inn and Golf Club.

After a morning meeting, the participants in the workshop met for lunch in the "Terrace Room." Mr. Barringer entered the Terrace Room and located where the members of his group were sitting. Mr. Barringer then went to the buffet table, made a sandwich and a salad, and then joined the others in his group at a table. After finishing his sandwich, Mr. Barringer returned to the buffet table for fruit. The buffet table ran parallel to a wall, approximately three feet from the wall. On this trip to the buffet table, Mr. Barringer picked up a bowl and went down the other side of the buffet table, the side nearest the wall. When Mr. Barringer finished selecting fruit from several displays, he turned and walked back along the same way, between the table and the wall. After he had taken a few steps, Mr. Barringer's right foot became entangled in an electrical cord. The electrical cord connected a crock pot on the buffet table to an outlet on the wall. The electrical cord was not taped down to the floor and was approximately two to three inches off the ground. Mr. Barringer stumbled and fell injuring his back. Plaintiffs' evidence details extensive treatment, including numerous surgeries, and continuing pain in Mr. Barringer's right leg and lower back.

The plaintiffs commenced this action on 4 November 1998 by complaint alleging a personal injury claim based on defendant's negligence and a loss of consortium claim. The matter was tried during the 10 July 2000 Civil Session of Wake County Superior Court. The jury returned a verdict finding defendant negligent and Mr. Barringer contributorily negligent. The judgment entered on 31 July 2000 pro-

BARRINGER v. MID PINES DEV. GRP., L.L.C.

[152 N.C. App. 549 (2002)]

vided that the plaintiffs should recover nothing from defendant; that the plaintiffs' complaint be dismissed with prejudice; and that the costs of the action be taxed against the plaintiffs. On 27 October 2000, the trial court denied plaintiffs' motion for a new trial and injunctive relief while granting in part defendant's motion for costs and expenses in the amount of $22,477.80. Plaintiffs appeal.

On appeal, plaintiffs contend that the trial court erred: (1) by refusing to give plaintiffs' requested jury instructions on diversion and contributory negligence; (2) by admitting the unexplained conclusions of a psychological test in contravention of *State v. Hoyle*, 49 N.C. App. 98, 270 S.E.2d 582 (1980), *disc. review denied*, 301 N.C. 724, 274 S.E.2d 233 (1981); (3) by refusing to allow plaintiffs to cross examine Mid Pines' manager about untruthful answers given in interrogatory answers concerning insurance coverage; and (4) by taxing plaintiffs with an expert witness fee of $15,000.00 which included deposition and trial preparation time. After careful review, we reverse and remand.

**[1]** Plaintiffs first contend that the trial court erred by refusing to give plaintiffs' requested jury instructions on diversion. Plaintiffs requested the following jury instruction on diverted attention:

"A plaintiff may be contributorially [sic] negligent if he fails to discover and avoid a defect that is visible and obvious. However, this rule is not applicable where there is some fact, condition or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition." *Walker v. Randolph Co.*, 251 N.C. 805, 810, 112 S.E.2d 551, 554 (1960) as cited in *Newton v. New Hanover Co. Board of Education*, 342 N.C. 554, 564, 467 S.E.2nd [sic] 58, 65 (1996).

Plaintiffs argue that the "doctrine of diverted attention" has been used to mitigate the "harshness" of contributory negligence. Plaintiffs contend that the requested instruction was correct as a matter of law and that they introduced evidence at trial to support an inference that the buffet presentation was designed to be and was in fact a diversion. Plaintiffs argue that the trial court's instruction misled the jury "in that it failed to encompass all of the law on this issue." We agree.

The trial court did not give plaintiffs' requested instruction. The trial court gave the following instruction with regard to negligence:

Now, under the law of this state, negligence refers to a person's failure to follow a duty of conduct as imposed by law. The law requires every owner of property to use ordinary care to keep the premises in a reasonably safe condition for lawful visitors who use them in a reasonable and ordinary manner.

Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury. A person's failure to use ordinary care is negligence under the law of this state.

Now, ordinarily a person has that duty to anticipate the negligence on the part of others. In the absence of anything that gives or should give notice to the contrary, a person has the right to assume and to act under the assumption that others will use ordinary care and follow standards of conduct enacted as law in the safety of the public.

However, the right to rely on this assumption is not absolute, and if the circumstances existing at the time are such as reasonably to put a person on notice that he cannot rely on the assumption, he is under a duty to use that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury.

With respect to the issue of contributory negligence, the trial court stated that "[t]he test of what is negligence is as I've already defined and read to you, explained to you, is the same for the Plaintiff as it is for Defendant."

"When a party aptly tenders a written request for a specific instruction which is correct in itself and supported by evidence, the failure of the court to give the instruction, at least in substance, is error." *Faeber v. E. C. T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972). "The trial court need not give special instructions exactly as requested by a party so long as the court's charge, taken as a whole, conveys the substance of the necessary requested instructions." *Alston v. Monk*, 92 N.C. App. 59, 63, 373 S.E.2d 463, 466 (1988), *disc. review denied*, 324 N.C. 246, 378 S.E.2d 420 (1989). To prevail on appeal, plaintiffs must show "that (1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to

encompass the substance of the law requested and (4) such failure likely misled the jury." *Liborio v. King,* 150 N.C. App. 531, 534, 564 S.E.2d 272, 274 (2002).

With respect to diverted attention, our Supreme Court has stated:

"When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. *To forget or to be inattentive is not negligence unless it amounts to a failure to exercise ordinary care for one's safety. Regard must be had to the exigencies of the situation, and the circumstances of the particular occasion. Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters,* or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and, if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence."

*Dennis v. Albemarle,* 242 N.C. 263, 268, 87 S.E.2d 561, 565-66, (citations omitted) (emphasis added), *reh'g dismissed,* 243 N.C. 221, 90 S.E.2d 532 (1955). *See also Hill v. Shanks,* 6 N.C. App. 255, 263, 170 S.E.2d 116, 121-22 (1969).

Plaintiffs must first show that their "requested instruction was a correct statement of law." *Liborio,* 150 N.C. App. at 534, 564 S.E.2d at 274. In *Nourse v. Food Lion, Inc.,* 127 N.C. App. 235, 242, 488 S.E.2d 608, 613 (1997), *aff'd,* 347 N.C. 666, 496 S.E.2d 379 (1998), this Court reversed the trial court's grant of summary judgment based on contributory negligence. This Court stated that:

[A] jury question is presented as to whether a reasonably prudent person would have looked down at the floor as she was shopping in the grocery store. A reasonably prudent person's attention could easily be diverted by advertisements or fruit and vegetable

displays. We cannot hold that as a matter of law under these circumstances the plaintiff in the exercise of "ordinary care" should have looked down at the floor.

*Id.* In *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 465, 279 S.E.2d 559, 561 (1981), the plaintiff was injured when she tripped over a platform that protruded into the store aisle. Our Supreme Court stated that:

> [T]here is evidence that the display and the placing of the impulse items were intended to attract and keep the customer's attention at eye level. When a merchant entices a customer's eyes away from a hazardous condition, we do not think he should be heard to complain when his efforts succeed.

*Id.* at 469, 279 S.E.2d at 563-64. Plaintiffs' instruction is correct in "that the defense of contributory negligence cannot be asserted where the defendant diverted the plaintiff's attention, preventing the visitor from discovering the obvious hazard." *Hall v. Kmart Corp.*, 136 N.C. App. 839, 841, 525 S.E.2d 837, 839 (2000).

Next, plaintiffs' instruction must have been supported by the evidence. *Liborio*, 150 N.C. App. at 534, 564 S.E.2d at 274. Here, Helen Downie ("Downie"), the resort manager for Mid Pines Inn and Golf Club, was asked whether she would "agree that an attractive display of food attracts someone's attention." Downie responded that *"[y]es, we eat with our eyes."* (Emphasis added.) Mr. Barringer testified that "there was an extraordinary buffet, . . . all sorts of food and flowers." Dr. Gary Lebby, a research professor of electrical engineering and a participant at the workshop, testified about the buffet.

Q. Now when you first walked through that door and the Terrace Room, what's the first thing that you noticed?

A. Seemed to be tables with different dishes, meats, cakes.

Q. Are you talking about buffet tables?

A. Buffet tables, yes.

Q. How did it appear to you?

A. *Looked delicious.*

(Emphasis added.) The buffet table was "huge, several tables slid together." The buffet included "all sorts of food and flowers" including potato, chicken, turkey, and ham salads along with "fruit bowls"

BARRINGER v. MID PINES DEV. GRP., L.L.C.

[152 N.C. App. 549 (2002)]

of fresh fruit, citrus fruit and melons. Plaintiffs' requested instruction was supported by the evidence.

The next question is whether "the instruction given, considered in its entirety, failed to encompass the substance of the law requested." *Liborio*, 150 N.C. App. at 534, 564 S.E.2d at 274. The trial court's instruction correctly stated a negligence and contributory negligence instruction. However, the instruction taken as a whole, does not "convey[] the substance of the necessary requested instruction[]." *Alston*, 92 N.C. App. at 63, 373 S.E.2d at 466. Plaintiffs' requested instruction contained language which would have instructed the jury that "where there is some fact, condition, or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition, the general rule [of contributory negligence] does not apply." *Swinson v. Lejeune Motor Co.*, 147 N.C. App. 610, 613, 557 S.E.2d 112, 116 (2001). The trial court's instruction here "failed to encompass the substance of the law requested." *Liborio*, 150 N.C. App. at 534, 564 S.E.2d at 274.

Plaintiffs must also show "that the jury was misled or that the verdict was affected by an omitted instruction." *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002). The trial court's instruction did not provide the jury with a complete instruction on the law as it pertained to the facts of this case. Because the jury returned a verdict of contributory negligence, we cannot say that the trial court's refusal to give the plaintiffs' requested instruction did not affect the verdict or mislead the jury.

Accordingly, the decision of the trial court is reversed and the matter is remanded to the trial court for a new trial. Our decision to reverse is based on the failure of the trial court to give appropriate instructions which would provide the jury with a fair statement of the law to enable them to weigh the evidence and testimony in this complex case. Even though inferences may be drawn from the evidence to support one party's version of the events, it is equally true that the same evidence can support alternate inferences which support the other party's version of the events. The jury is entitled to have complete instructions on the applicable law so they can fairly weigh the evidence and inferences when they deliberate.

[2] We next consider the issue of the admission into evidence of the Minnesota Multiphasic Personality Inventory ("MMPI"). Plaintiffs contend that the trial court erred by ignoring the holding of *State v. Hoyle* and admitting the "unexplained conclusions" of the MMPI.

Plaintiffs argue that *Hoyle* held that an MMPI test, standing alone, is not admissible because it is prejudicial hearsay. Plaintiffs contend that the MMPI summary contained highly prejudicial terms, such as "psychopathic deviate," "hypochondriasis," and "hysteria." We agree.

In *Hoyle*, a psychiatrist testified about the results of an MMPI administered by a psychologist who did not testify. This Court held "that the evidence in question was hearsay and incompetent, and its admission was highly prejudicial to defendant." *Hoyle*, 49 N.C. App. at 103, 270 S.E.2d at 585. In reaching this holding, this Court stated that:

> The record clearly shows that: *(1) the psychologist who admin-istered the test was not present at the trial of defendant and, therefore, could not be cross-examined; (2) there was not any testimony that the test in question was properly administered as required by instructions; (3) neither the psychologist who administered the test nor Dr. Rood stated whether the condi-tions found on the date of the examination were temporary or permanent in nature; (4) the complained of testimony was admitted to prove the truth of the matter asserted therein; and (5) the trial court did not instruct the jury to limit the evidence for a particular purpose.*

*Id.* at 103, 270 S.E.2d at 584-85 (emphasis added).

Here, Mr. Barringer was given psychological testing, including an MMPI, at the Duke Pain Clinic on 23 October 1996. Dr. Wells Edmundson ("Dr. Edmundson"), Mr. Barringer's primary care physi-cian, testified that Elaine Crovitz, Ph.D. ("Dr. Crovitz"), a fellow in the Academy of Clinical Psychology, "performed the interpretation" of the MMPI. Defendant questioned Dr. Edmundson extensively about Dr. Crovitz's report and introduced it into evidence.

In Dr. Crovitz's report, the "Analysis of Test Data" section stated that "[d]espite defensiveness, clinical elevations were obtained on the following: Psychopathic Deviate (T=71), Hypochondriasis (T=88), Depression (T=80), Hysteria (T=82), Psychaesthenia (T=72)."

The trial court allowed defendant to question Dr. Edmundson regarding the content of Dr. Crovitz's interpretation of the MMPI. Dr. Edmundson read certain parts of the report into evidence and also read certain definitions from a medical dictionary. His testimony included:

A The MMPI profile obtained reflects a *highly defensive orientation to test items, with the patient attempting to present himself in both a perfect and good light.* He has strong needs to be seen as . . . conscientious, reasonable, beyond criticism or reproach, *and is likely to deny, minimize psychic issues.* Despite defensiveness, clinical elevations were obtained on the following.

. . . .

Q Elevation would be above normal?

A Right.

. . . .

A *[C]linical elevations were obtained on the following: Psychopathic, deviate,* T equals 71.

Q Do you know—can you explain to the jury what *psychopathic, deviant or deviate* means?

A *Some one [sic] who is out of the normal of society,* I guess.

. . . .

A *Hypochondriac: A person with a somatic over concern, including morbid attention to the details of bodily function and exaggeration of any symptoms no matter how insignificant; second definition, a person manifesting hypochondriasis; and then the definition of hypochondria is: A morbid concern of ones own health and exaggerating attention to any unusual bodily or mental sensations, a dilusion [sic] that one is suffering from some disease for which no physical basis is evident.*

. . . .

Q If I may, what were the main components of *hypochondriasis, was it morbid concern* for—what was that?

A A *morbid concern about ones own health.*

Q If you can read on, I'll try to keep up?

A *An exaggeration of any symptoms, no matter how insignificant.*

. . . .

Q  How about *hysteria*?

A  Well, you know, apparently *he scored a clinical elevation on hysteria*, but I just never—I'll bet you got this highlighted in the dictionary, too, but I never thought—

. . . .

Q  Okay. I understand in your assessment—can you look that definition up just so the jury can have that as one of the things to consider?

A  Sure. *Hysteria: A somatic condition where there is an alteration or loss of physical function that suggests a physical disorder such as a paralysis of the arm or vision, but that's a complexion of psychological conflict or need.*

(Emphasis added.)

In closing arguments, defendant made reference to the definitions and argued the following:

Remember these diagnosis [sic]: *Psychopathic deviate, hypochondriasis, depression, hysteria, and psychasthenia.* Really want to talk about a couple of these. I'll read their definitions from Steadman's Medical Dictionary: *Hypochondriasis: A morbid concern about one's own health and exaggerated attention to any unusual bodily or mental sensation. A delusion that one is suffering from some disease for which no physical basis is evident. Hysteria: A somataform disorder in which there is an alteration or loss of physical dysfunctioning that suggests a physical disorder, such as paralysis of an arm or disturbance of vision, but that is instead apparently an expression of a psychological conflict or need.*

(Emphasis added.) Further, a defense exhibit which contained the terms "hypochondriasis" and "hysteria" and their definitions was admitted into evidence.

Here, as in *Hoyle*, the psychologist who administered the test was not present at the trial, there was no testimony at trial to establish that the test was properly administered, there was no testimony whether results of the analysis were temporary or permanent, the results were admitted for the truth of the matter asserted, and the trial court provided no limiting instruction with respect to the testimony regarding the MMPI.

**BARRINGER v. MID PINES DEV. GRP., L.L.C.**

[152 N.C. App. 549 (2002)]

Defendant argues that the MMPI is admissible pursuant to Rule 803(6) of the North Carolina Rules of Evidence. Defendant argues that *Hoyle* is not controlling since it was decided before the adoption of the North Carolina Rules of Evidence. We are not persuaded.

"Rule 803(6) states that '[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge . . .' is an exception to the hearsay rule." *Chamberlain v. Thames*, 131 N.C. App. 705, 716, 509 S.E.2d 443, 449 (1998) (quoting G.S. § 8C-1, Rule 803(6)). "Rule 803(6) expressly permits the use of a custodian's testimony to establish a foundation for admission of the record." *CIT Grp./Commercial Servs., Inc. v. Vitale*, 148 N.C. App. 707, 709, 559 S.E.2d 275, 276 (2002).

The Commentary to Rule 803(6) states that this "exception is derived from the traditional business records exception." G.S. § 8C-1, Rule 803(6) official commentary (2001). The business records exception is "one of the well recognized exceptions to the hearsay rule." *Sims v. Insurance Co.*, 257 N.C. 32, 35, 125 S.E.2d 326, 328 (1962). Prior to the adoption of the Rules of Evidence, hospital records and medical records were admissible "under the business records exception to the hearsay rule" upon a proper foundation. *State v. Heiser*, 36 N.C. App. 358, 359, 244 S.E.2d 170, 172 (1978).

> A proper foundation consists of the testimony by a witness familiar with such records and the system under which they are made that the record is authentic and that it was prepared at or near to the time of the event recorded by a person having personal knowledge of such event.

*Id.* A "hospital librarian or custodian of the record" could provide the requisite foundation for admission of the records. *Sims*, 257 N.C. at 35, 125 S.E.2d at 329.

The business records exception was followed by the courts of this State when *Hoyle* was decided. Even with the availability of the exception, the *Hoyle* court held "that the [MMPI] was hearsay and incompetent, and its admission was highly prejudicial to defendant." *Hoyle*, 49 N.C. App. at 103, 270 S.E.2d at 585.

While a custodian's affidavit may provide the necessary foundation for admission pursuant to Rule 803(6), we conclude that, the

adoption of the North Carolina Rules of Evidence notwithstanding, *Hoyle* is applicable to the facts here. Accordingly, the testimony regarding Dr. Crovitz's interpretation of the MMPI, defendant's use of the terms and definitions in closing argument, and the use of a trial exhibit containing the terms and definitions prejudiced plaintiffs at trial and warrant a new trial.

We further note in passing that "as the cause must be remanded for the error herein pointed out, the costs will follow the final judgment." *Barrier v. Troutman*, 231 N.C. 47, 51, 55 S.E.2d 923, 926 (1949).

Accordingly, the decision of the trial court is reversed and the matter is remanded for a new trial.

Reversed and remanded.

Judge THOMAS concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

The trial court properly withheld plaintiff's requested instruction on "diverted attention for two reasons": (1) the requested instruction was not a proper statement of the law, and (2) the requested instruction was not supported by the evidence. The trial court also properly admitted into evidence medical records under the North Carolina Rules of Evidence, Rule 803(6) (2001). The trial court did not err. I respectfully dissent.

## I. Erroneous Statement of the Law

The trial court may exercise its discretion and refuse to give requested instructions based on erroneous statements of the law. *Haymore v. Thew Shovel Co.*, 116 N.C. App. 40, 49, 446 S.E.2d 865, 871 (1994) (citing *State v. Agnew*, 294 N.C. 382, 385, 241 S.E.2d 684, 692, *cert. denied*, 439 U.S. 830, 58 L. Ed. 2d 124 (1978)).

The majority's opinion adopts plaintiff's argument that "the 'doctrine of diverted attention' has been used to mitigate the 'harshness' of contributory negligence." Neither plaintiff nor the majority's opinion cite any case or any other authority for the proposition that a "doctrine" of diverted attention exists. I fail to find that any such "doctrine" exists. The cases cited by the plaintiff and the majority's

opinion discuss "forgetfulness and inattentiveness" in the context of what constitutes negligence in general. The claimed "doctrine" is nothing more than a detailed explanation of the duty of ordinary care in varying circumstances and situations.

With respect to "inattentiveness" and "forgetfulness," our Supreme Court stated that the issue is "if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence." *Dennis v. Albermarle*, 242 N.C. 263, 268, 87 S.E.2d 561, 566 (1955) (quotation omitted).

Plaintiff requested the following instruction:

A plaintiff may be contributorilly [sic] negligent if he fails to discover and avoid a defect that is visible and obvious. However, *this rule is not applicable* where there is some fact, condition or circumstance which might divert the attention of an ordinary prudent person from discovering or seeing an existing dangerous condition. (Emphasis supplied)

The requested instruction is not an accurate statement of the law. Plaintiff's assertion is that the rule of *negligence does not apply* when a party's attention is diverted. The question of whether a party acted as "an ordinary prudent person" always applies when determining whether a person was negligent. Plaintiff's notion that that rule of an ordinary prudent person "is not applicable" misstates and is not a "fair statement of the law" as the majority holds. The jury must consider all the facts and circumstances in order to determine whether a party's actions fell below those of an ordinary prudent person. The jury may not ignore, or fail to apply, the rule of contributory negligence as requested by plaintiff.

At bar, the trial court did not peremptorily grant summary judgment to defendant holding as a matter of law that plaintiff was contributorily negligent. Plaintiff freely argued, but failed to convince the jury, that plaintiff was not negligent due to being distracted by the buffet table's attractive qualities. The trial court properly instructed the jury on negligence and contributory negligence and submitted those issues to the jury. The jury found plaintiff was contributorily negligent given all the facts, circumstances, and arguments surrounding the attractiveness of the buffet table and its ability to distract or divert plaintiff's attention.

BARRINGER v. MID PINES DEV. GRP., L.L.C.

[152 N.C. App. 549 (2002)]

## II. Instruction Not Supported By Evidence

Even if one presumes that plaintiff's requested instruction was a correct statement of the law, from the facts presented, no circumstances existed nor can any inference be drawn that transforms plaintiff's forgetfulness or inattentiveness to anything other than negligence. Considering the evidence in the light most favorable to plaintiff, and affording him the benefit of every reasonable inference, plaintiff presented no circumstances or facts that (1) required plaintiff's undivided attention to other matters, (2) produced hurry or confusion to divert plaintiff's attention, (3) required plaintiff to react to conditions that arose suddenly which were calculated to divert plaintiff's attention momentarily from the danger, or (4) transformed plaintiff's actions from anything other then negligence. *Dennis*, 242 N.C. at 268, 87 S.E.2d at 565-66 (citation omitted). The evidence wholly fails to show or raise an inference that plaintiff was distracted by the buffet when he tripped over a plugged-in cord for three reasons.

First, plaintiff had availed himself of the buffet the day before and multiple times on the day that he tripped. Any attractive powers emanating from the buffet had ended long before plaintiff's multiple trips to the buffet on two consecutive days.

Second, after being told <u>not</u> to go behind the buffet, plaintiff squeezed between the rear wall and the buffet table. In order to walk between the table and the wall, plaintiff safely stepped over the same cord he later tripped over as he was leaving the area between the wall and the buffet table. Plaintiff successfully negotiated his entry step over the cord to get behind the table while claiming that "his attention was diverted" by the buffet table. Plaintiff cannot now claim his attention was diverted when, after serving his plate and leaving the table, he unsuccessfully attempted to return from whence he had successfully traveled on a prior occasion.

Third, plaintiff testified that after he finished filling his plate for a second time that day from the buffet, he "[l]ooked up, decided where my party was, where I needed to be. I turned, headed out the buffet bar." Even again presuming that the attractiveness of the buffet table was a diversion, there necessarily became a point in time when the buffet's all consuming attractiveness ended. Plaintiff fell when his attention was focused on returning to his seat, after his fascination with the buffet table had ended. The trial court did not err instructing the jury.

### III. Rule of Evidence 803(c)

Plaintiff also claims error to the admission at trial of testimony concerning his medical records. Any language from our Court in *State v. Hoyle*, 49 N.C. App. 98, 270 S.E.2d 582 (1980), *disc. rev. denied*, 301 N.C. 724, 274 S.E.2d 233 (1981) concerning "records of a regularly conducted activity" has been superceded. *Hoyle* was decided prior to the adoption of the North Carolina Rules of Evidence in 1983. Rule 803(6) now controls the admission of records of a regularly conducted activity at trial, not *Hoyle*. Under Rule 803(6), medical records may be admissible when there is an affidavit from a custodian of the records which shows that the record was made at or near the time of the evaluation, that the record was created by a person with knowledge, and the record was kept in the ordinary course of business. *Chamberlain v. Thames*, 131 N.C. App. 705, 716-17, 509 S.E.2d 443, 449-50 (1998) ("This affidavit satisfied the requirements of Rule 803(6).")

Here, the record shows that defendant fully complied with all of the requirements of North Carolina Rule of Evidence 803(6), Records of Regularly Conducted Activity. Plaintiff was afforded the opportunity to depose the author of the report and subpoena her to appear at trial. Plaintiff declined all of the above. Medical records are not "cross-examined," people are. There is no evidence in the record that plaintiff was unfairly surprised by the information elicited by defendant from plaintiff's witness on cross-examination. I would overrule this assignment of error.

### IV. Other Assignments of Error

The majority's opinion does not reach plaintiff's remaining assignments of error. I have thoroughly reviewed plaintiff's remaining assignments of error, and find them without merit. The trial court correctly refused to allow cross-examination about defendant's insurance coverage. Plaintiff also failed to show that the trial court abused its discretion in awarding expert witness fees. I would overrule plaintiff's remaining assignments of error.

### IV. Summary

The facts here do not approach with any similarity those facts in prior cases where "undivided attention to other matters" or "hurry or confusion" or "conditions arising suddenly" were present. On several occasions, plaintiff had traveled to the buffet, was warned not to go behind the table, and had safely traversed the same cord that he later

tripped over. Plaintiff had fair and full opportunity to depose or call the author of the medical report as a witness at trial. Any reliance on *Hoyle* is misplaced due to the adoption of the North Carolina Rules of Evidence in 1983. From the evidence presented, after diligent argument from counsel and proper instructions, the jury unanimously found plaintiff to be contributorily negligent. I would affirm the decision of the trial court. I respectfully dissent.